# MARCH, 1940

STATE OF TEXAS V. B. J. WYNNE ET AL.

No. 7404. Decided December 6, 1939.
Rehearing overruled March 6, 1940.
(133 S. W., 2d Series, 951.)

*William McGraw,* former Attorney General, *Gerald Mann,* Attorney General, and *Pat M. Neff, Jr.,* Assistant Attorney General, for plaintiff in error.

The motor fuel tax sought to be collected by the State is not an ad valorem tax but is excise or occupation tax placed thereon by the Legislature and is payable by the producing company as a distributor of motor fuel within the State. Grayburg Oil Co. v. State, 3 S. W. (2d) 427, reversed on other grounds, 278 U. S. 582; The Pullman Palace Car Co. v. State, 64 Texas 274.

The Legislature having the right to levy an excise tax, and the 4 cent gasoline tax being purely a statutory tax, the lien on the property of the producer to secure such tax is superior to all other liens. State v. Jones, 290 S. W. 244; Ex parte Klugsberg, 126 Texas 225, 87 S. W. (2d) 465; Childress County v. State, 127 Texas 343, 92 S. W. (2d) 1011.

*Samuels, Foster, McGee & Brown, A. M. Herman, Massingill & Belew, Homa S. Hill, Burton B. Paddock, Robert Sansom,* and *Geo. M. Conner,* all of Fort Worth, *Wynne & Wynne,* of Wills Point, *Julius H. Runge, Clyde O. Eastus, James L. Blackstrom*

and *Frank B. Potter,* all of Dallas—the last three being United States District Attorneys—for defendants in error.

On the proposition that the defendant corporation was actually insolvent, and that the United States was entitled to priority of liens. Trimmer v. Carlton, 116 Texas 572, 296 S. W. 1070; Hart v. Huie, 15 S. W. (2d) 654; 3 Tex. Jur. 1102.

It was not the intention of the Legislature, by its various enactments, to make the State's lien for gasoline tax prior and superior to contractual liens. American Surety Co. v. Axtell, 120 Texas 166, 36 S. W. (2d) 715; County of Rockwall v. Kaufman County, 69 Texas 172, 6 S. W. 431.

MR. JUSTICE SHARP delivered the opinion of the Court.

This case presents the question of the priority of the payment of debts due holders of liens over the payment of taxes due the United States and the State of Texas, and also presents the question of the priority of the payment of taxes due the United States over those due the State of Texas, out of the same fund,—under Section 3466 (31 U. S. C. A. §191) and Section R. S. 3186 of the Revised Statutes of the United States (26 U. S. C. A. §1560-1562) and under Article 7065a, Section 7, of the Vernon's Civil Statutes of Texas (1936).

B. J. Wynne filed this suit on May 1, 1935, in the District Court of Van Zandt County, against the Star Refining & Producing Company, alleging a cause of action on a promissory note for the sum of $2,000.00, executed by the defendant, Star Refining & Producing Company, and for foreclosure of a deed of trust lien executed by the defendant to secure its certain bond issue, of which issue twenty Five Year First Mortgage 8% bonds of par value of $100 each were transferred and delivered to plaintiff by defendant as a pledge of collateral security on such note.

Plaintiff alleged that defendant was insolvent or threatened with insolvency, that its capital stock and surplus had been exhausted and depleted, and that it owed various sums of money to various individuals and had no cash assets with which to pay its debts, including certain Federal and State taxes, and upon these and similar allegations the appointment of a receiver was sought. The trial court appointed, ex parte, a receiver of and for the assets and properties of the defendant, and the receiver duly qualified and took possession of such properties. The defendant entered its appearance, and waived further notice of hearing on the application for receivership,

adopting the allegations of plaintiff's bill, and consenting to the appointment of a receiver of its properties.

Numerous claims were filed with the receiver, and many of such claimants filed formal interventions in the cause. The United States of America intervened for certain gasoline, capital stock, and income taxes, accruing from September, 1932, to June 30, 1935, with penalties and interest thereon, for the sum of $15,125.93, and asserted a right to prior and preferential payment from the proceeds of the receivership estate under the terms of Section 3466, Revised Statutes (Section 191, Title 31, USCA). The United States also asserted a lien for such taxes, penalties, and interest, under the terms of Section 3186, Revised Statutes (Sections 1560-62, Title 26, USCA), paramount and superior to other liens, particularly that asserted by the State of Texas.

For convenience and brevity, we will refer to the United States of America as the United States, and to the State of Texas as the State.

The State intervened for motor fuel taxes, penalties, and interest accruing against defendant as distributor of motor fuel during the years 1932, 1933, 1934, and 1935, in the total amount of $25,068.60, and asserted, to secure such taxes, penalties and interest, a statutory tax lien under Section 7, Article 7065, Revised Civil Statutes, prior and paramount to all other liens.

A. M. Lockett & Company, Ltd., intervened for the balance due on a chattel mortgage note, executed on March 12, 1932, in its favor by defendant, and secured by a chattel mortgage lien on certain described machinery and equipment sold by said intervenor to defendant on said date. This intervenor alleged, as additional security on such note for purchase money, the delivery and transfer by defendant, under pledge or collateral agreement, of certain eighteen bonds of the par value of $100 each, secured by deed of trust of date June 1, 1928, upon certain refining property of the defendant, which deed of trust and bond issue were alleged to be the third successive renewal and extension of an original bond issue and deed of trust made October 7, 1921. Foreclosure of its lien upon such bonds and its deed of trust lien was sought in addition to its chattel mortgage lien.

James Harrison intervened for the balance due on a certain promissory note in the principal sum of $14,000.00, executed by defendant in his favor on or about June 1, 1928, and secured by a chattel mortgage of even date upon certain nineteen tank cars, the property of defendant. Certain of such

cars having been released from such chattel mortgage, foreclosure was sought on nine of said cars. It was alleged in the alternative by this intervenor that prior to the institution of this suit, and after the maturity and default of such note, it was agreed between him and defendant that the remaining nine tank cars would be delivered to and accepted by him in satisfaction of his debt; but such cars were left on the properties and in the possession of defendant, under agreement it would deliver same to intervenor upon demand, or to such purchaser as defendant might procure, subject to the approval of such intervenor.

Numerous interventions were filed by the holders of certain bonds of defendant, secured by a deed of trust upon certain described properties of defendant, praying that such lien be declared first and superior against such property, for foreclosure of same, and for payment ratably of such bond holders from the proceeds. The names of the bond holders and the amounts claimed by each are more fully shown in paragraph 16 of the court's judgment.

The case was tried before the court without a jury. The trial court in its final judgment held:

(a) That A. M. Lockett & Company, Ltd., was entitled to judgment against the defendant and receiver for the amount sued for, with foreclosure of both its chattel mortgage lien and its pledgee's lien upon the described bonds, provided the proceeds from the mortgaged property were insufficient.

(b) That as to the property covered by the chattel mortgage held by intervenor James Harrison, title to such property passed to and vested in such intervenor prior to receivership, under agreement to that effect, and the receiver and other parties had no right or interest in same.

(c) That the intervening bondholders named in paragraph 16 of the court's judgment had a first and prior deed of trust lien upon the property described in the deed of trust of date June 1, 1933, in renewal and extension of prior deeds of trust, and directed the sale of such property and the application of the proceeds to the payment ratably of such bondholders, after the payment of court costs. Certain three intervening bondholders named in paragraph 18 of the court's judgment were not given such priority, but were subordinated to the liens of the State and the United States.

(d) The trial court also held that such lien interest given by Section 7 of Article 7065a was inferior to the chattel mortgage liens of A. M. Lockett & Company, Ltd., and James Har-

rison and the deed of trust liens of certain intervening bond-holders. The trial court further held that such statutory lien was inferior to both the right of preferential payment and the right of lien asserted by the United States.

(e) As between the State and the United States, the court held that the lien of the United States was prior to the claim of the State against the property of the defendant,—subject, of course, to the other priorities therein adjudicated, and that the United States was entitled to full payment of its claim before any sum of money should be paid to the State on its claim. Judgment was rendered for the United States and the State in the amounts sued for.

(f) The trial court gave judgment in favor of certain unsecured creditors, who either filed claims with the receiver or intervened, the names and amounts more particularly appearing in paragraph 26 of the trial court's judgment. The State alone appealed the case to the Court of Civil Appeals, and the judgment of the trial court was affirmed by that court.

The Court of Civil Appeals upheld the judgment of the trial court, and also construed Section 7, supra, and held that such statute was invalid in the following respects: (1) That the motor fuel tax and the lien securing same on the land on which the refinery is located and the tax and lien on the machinery and other personalty were essentially an ad valorem tax, and such lien must fail, since it applied to real estate described in the decree as well as assets of a personal character, without any separate assessment in the matter of fixing liens thereon, as required by statute and Article 8, Section 15, of the Constitution of Texas; (2) that the levy of the occupation tax in question on the machinery and other equipment on the premises of defendant, in addition to ad valorem taxes due thereon under general laws, is violative of the provisions of Article 8, Section 9, Constitution of Texas, fixing the maximum of taxes that may be levied on property in this State; and also constitutes a violation of Article 8, Section 1, Constitution of Texas, requiring taxes to be equal and uniform.

The opinion of the Court of Civil Appeals embodies the judgment of the trial court, and we refer to same for a more detailed statement of the case and the full judgment of the trial court. (113 S. W. (2d) 325.)

The State contends that the Court of Civil Appeals erred in holding that the lien prescribed in Article 7065a-7 on land on which the refinery and other property is located was taxable as realty, that the tax thereon was essentially an ad

valorem tax, and that the lien provided for in said Article in favor of the State could not be enforced, as is attempted to be done in this suit.

Section 7 of Article 7065a, as amended, in part reads as follows:

"All taxes, fines, penalties and interest due by any distributor to the State shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, upon all of the property of any distributor, devoted to or used in his business as a distributor, which property shall include refinery, blending plants, storage tanks, warehouses, office buildings and equipment, tank trucks or other motor vehicles, stocks on hand of every kind and character whatsoever used or usable in such business, including crude oil or other materials for the manufacture, refining, blending or compounding of motor fuels and the refined products therefrom and the proceeds from the sale of such materials and refined products, and any other property of every kind and character whatsoever, and wherever situated devoted to such use, and each tract of land on which such refinery, blending plant, tanks, or other property is located, or which is used in carrying on such business."

Section 2(a) of Article 7065a levies the following occupation or excise taxes:

"There is hereby imposed an occupation or excise tax of four (4) cents on each gallon of motor fuel or fractional part thereof. The said tax shall accrue and be paid as hereinafter provided upon the first sale in Texas."

Section 1(d) of Article 7065a provides that the

" 'First Sale' shall mean and include the first sale, distribution or use in this State of motor fuel refined, blended, imported into or in any other manner produced in, acquired, possessed or brought into this State."

Section 2(d) causes the excise or occupation tax levied by Section 2(a) to accrue as follows:

"Every distributor making first sale of motor fuel shall pay to the State of Texas an occupation or excise tax equal to four (4) cents per gallon or fractional part thereof, so sold, distributed or used, and such tax shall be due and payable at the office of the Comptroller at Austin, Texas, on the 20th day

of each month, the same to be based on such sales or use made during the calendar month next preceding."

Section 6(a) of Article 7065a further provides:

"Before any permit shall be issued and before engaging in the first sale of motor fuel in Texas, every distributor shall execute and file with the Comptroller a good and sufficient surety bond, which shall run concurrently with the permit required of a distributor to be obtained. The said bond shall be signed by said distributor and a good and sufficient surety company or companies authorized to do business in this State, to be approved by the Comptroller, in an amount not less than One Thousand Dollars ($1,000) nor more than Twenty-five Thousand Dollars ($25,000), payable to the State of Texas, and conditioned upon the full, complete and faithful performance of all the conditions and requirements of the law taxing motor fuel, on a form to be prescribed by the Comptroller with the approval of the Attorney General, expressly providing for the performance of said obligation and the payment of all taxes, costs, penalties and interest at Austin, Texas."

By Section 6(d) of the Act, any distributor is given his option of depositing in the Suspense Account of the State Treasury money or certain approved securities in the amount of bond that might be required and in lieu thereof.

When Sections 6(a) and 7 of Article 7065a, supra, are considered together, it clearly appears that the Legislature had in mind that the bond or deposit required by Section 6(a) had for its purpose only partial security for the payment of the tax, because it is undisputed that the tax due for the taxing period far exceeds the amount of the bond or deposit required; that Section 7, as amended, is to be construed as being an additional requirement, and such Act fixes "a preferred lien * * upon all of the property of any distributor, devoted to or used in his business as a distributor," and specifically describes the property covered by a lien therein as including refineries, blending plants, storage tanks, warehouses, office buildings, and equipment, etc., devoted to or used in such business.

■ The rule is generally accepted in this State that all property rights acquired and held, and all contracts made, are subject to the authority of the State to levy its taxes and collect its revenues for the support of the government. State v. Bank of Mineral Wells, 251 S. W. 89 (writ refused); Preston v.

Anderson Co. Levee Imp. Dist. No. 2, 261 S. W. 1077 (writ refused); 9 Tex. Jur., pp. 549, 550, sec. 114.

■ It is not always easy to draw an exact line of demarcation between an ad valorem tax and an occupation or excise tax. In Cooley on Taxation, 4th ed., Vol. 1, p. 131, sec. 45, the distinction between a property tax and an excise tax is stated as follows:

"Generally the answer to the question whether a particular tax is a property tax or an excise tax is so apparent that there is no room for argument; but in many phases the question has been the subject of much litigation, especially in regard to whether a tax on a corporation is an excise tax or a property tax. If the tax is directly on property itself, the tax is a property tax; but a tax is an excise tax rather than a property tax where it is not a tax on property as such, but upon certain kinds of property, having reference to their origin and their intended use. Another thing to be noted, it has been said, is that the obligation to pay an excise tax is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand, as in the case of a property tax, is lacking."

As said in American Law Reports, Vol. 103, p. 18:

"One general test is suggested in Society for Savings v. Coite (1868) 6 Wall. (U. S.) 594, 18 L. ed. 897, in effect as follows: An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them and fixing their amounts. If a tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed upon a valuation of property, and assessed by assessors either where it is situated or at the owner's domicile, although privileges may be included in the valuation, it is considered a property tax."

The case of Grayburg Oil Company v. State (Com. Appls.), 3 S. W. (2d) 427, involved the construction of the Motor Fuel Tax Law then upon the statute books, and in discussing the nature of such tax it was said:

"The tax in question has two important characteristics. (a) It is an occupational excise. * * * That a state may thus measure an occupation tax, even when interstate transactions are taken into account, has full recognition in G. H. & S. A. Ry. Co. v. Texas, supra. See, for analogies, Plumber v. Coler, 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998; Hamilton Mfg. Co. v. Mass., 6 Wall. 632, 18 L. Ed. 904; Home Ins. Co. v. New York, 134 U. S. 594, 10 S. Ct., 593, 33 L. Ed. 1025; Society for Savings v. Coite, 6 Wall. 594, 18 L. Ed. 897; Provident Sav. Trust v. Mass., 6 Wall. 611, 18 L. Ed. 907."

The case of Producers' Oil Co. et al v. Stephens et al, 99 S. W. 157 (writ of error denied), involved the construction of the provisions of Chapter 148, page 358, of the Acts of the 29th Legislature, known as the "Kennedy Bill." It was contended in that case that the provisions of the Act involved violated certain provisions of the State Constitution, as is done in this case, and in answer to such contentions the court in the course of its opinion said:

"Appellants contend that said section violates the state Constitution as to rate of taxation, equality and uniformity of the tax, assessment of property in the county where situated, and as to equalization of values. This contention is based upon the idea that the tax imposed is an ad valorem tax. In our opinion the tax is not upon the gross products of the oil wells, but upon the occupation of owning, controlling, or managing oil wells producing oil; and the amount of the tax is measured by a percentage of the market value of the gross products. State v. Railway Co., 97 S. W. 71, 16 Tex. Ct. Rep. 909. Nor does said section violate any provision of the United States Constitution, as the Legislature has the authority to single out and make classifications for the purpose of levying occupation taxes; and all that is required in reference to equality and uniformity is that the taxes imposed be equal and uniform upon the same class of subjects, and the section complained of complies with this requirement, as it operates on all oil producers alike. State v. Railway Co., supra. And, although this law imposes an occupation tax upon the oil producers who pay an ad valorem tax upon the real estate producing oil, it does not constitute double taxation, not permitted by the law, as it is within the authority of the Legislature to impose an ad valorem tax on the oil-producing property of appellants, and an occupation tax for the use of this property in the production of oil."

■ The Act before us specifically provides that, "There is hereby imposed an occupation or excise tax of four (4) cents on each gallon of motor fuel or fractional part thereof," and then describes how such tax shall accrue and be paid. It clearly appears from this Act that the tax is imposed directly by the Legislature without assessment, and the amount of such tax is measured by the amount of business done or to which the conferred privileges have been enjoyed, irrespective of the nature or value of the taxpayer's assets. An ad valorem tax is levied against property on its value, and "such tax does not impose any condition, nor does it place any restriction upon the use of the property taxed."

All parties engaged in such business by virtue of this law are taxed alike. The amount of tax imposed is based on the number of gallons of motor oil used or sold. In other words, such tax is imposed in addition to the ad valorem tax levied and assessed against property, and is levied and assessed on property belonging to persons pursuing the occupation of a distributor under the provisions of Section 7 of Article 7065a of this law, and such tax does not violate Section 1, or Section 2, or Section 9, or Section 15, of Article 8, of the Constitution of the State of Texas. Texas Co. v. Stephens, 100 Texas 628, 103 S. W. 481; State v. Railway Co., 100 Texas 153, 97 S. W. 71; Producers Oil Co. v. Stephens, 99 S. W. 157 (writ refused); Ex parte Walker, 52 S. W. (2d) 266; 40 Tex. Jur., pp. 58, 59, 60.

The foregoing contention is sustained.

■ The State further contends that the Court of Civil Appeals erred in holding that the liens and bonds executed by the Star Refining & Producing Company were superior to the claim or lien of the State fixed by Section 7 of Article 7065a. This law has been amended several times by the Legislature. Below is set forth the history of such lien as fixed by the statute through its various amendments since it was originally enacted:

House Bill No. 6, Chapter 88, Acts Second Called Session, 41st Legislature (Article 7065f, R. C. S. 1925), effective July 15, 1929, created for the first time a preferred lien for motor fuel taxes, as follows:

"All taxes, fines, penalties and interest due by any distributor to the State shall be a preferred lien upon all of the property of any distributor devoted to or used in his business as distributor, not exempt under the Constitution. * * *"

House Bill No. 536, Chapter 98, Acts Regular Session 42nd

Legislature (Article 7065f, R. C. S. 1925) effective May 5, 1931, made no change in the provisions of the lien section.

House Bill No. 247, Chapter 44, Regular Session 43rd Legislature (Article 7065, R. C. S. 1925), effective March 21, 1933, amended the lien statute to read as follows:

"All taxes, fines, penalties and interest due by any distributor to the State shall be a preferred lien, first and prior to any and all other existing liens, upon all of the property of any distributor, devoted to or used in his business as a distributor, which property shall include refinery, blending plants, storage tanks, ware houses, office buildings and equipment, tank trucks or other motor vehicles or any other property devoted to such use, and each tract of land on which such refinery, blending plant, tanks or other property is located, or which is used in carrying on such business."

Article 7065a-7, the statute now in force, became effective May 11, 1935, and is quoted above.

Many courts hold that property used in a business may be subjected to a lien for an excise or occupation tax on the business carried on, although it is not owned by the person carrying on the business. This rule is clearly stated in 26 Ruling Case Law, p. 392, sec. 350, as follows:

"An excise tax may be made a lien on the property in connection with which the act, privilege or occupation taxed is performed, enjoyed or carried on. Thus an inheritance tax may be made a lien on the property transferred although an inheritance is an excise on the privilege of transfer and not a property tax. Property used in a business may be constitutionally subjected to a lien for an excise on the business although it is not owned by the person carrying on the business. The owner is not only chargeable with a knowledge of the law in respect thereto, but he is presumed to know the business there carried on, and to have let the property with knowledge that it might become encumbered by a tax imposed upon such business."

The following authorities are cited to sustain this statement of the rule: Hodge v. Muscatine County, 196 U. S. 276, 25 S. Ct. 237, 49 L. Ed. 477, sustaining 121 Ia. 482, 96 N. W. 968, 100 A. S. R. 304, 67 L. R. A. 624; State v. Ferris, 53 Ohio St. 314, 41 N. E. 579, 30 L. R. A. 218; Brown Shoe Co. v. Hunt, 103 Ia. 586, 72 N. W. 765, 64 A. S. R. 198, 39 L. R. A. 291. See also 103 A. L. R., p. 18, for an annotation of the many cases bearing upon this question.

In the case of Hodge v. Muscatine County, supra, which involved the construction of an Iowa statute, the Supreme Court of the United States upheld the constitutionality generally of a lien fixed upon physical and tangible property used in a certain business subject to an occupation tax. This case involved a tax upon cigarette dealers, and a lien was fixed "upon all property, both personal and real, used in connection with the business."

In the course of the opinion the court said:

"It was within the power of the legislature to make the tax a lien upon the property whereon the business was carried. If general taxes upon real estate and specific taxes for improvements thereto, including pavements, sidewalks, sewers, the opening of streets and keeping them clean, may be made liens upon the property affected, it is difficult to see why a tax upon the business carried on upon such property may not be made a lien as well as a claim against the owner."

Other States have enacted analogous statutes. For a discussion of some of the laws enacted by other States, we cite the following cases: Irwin v. State of Alabama, 80 Fed. Rep. (2d) 432; Atlanta Trust Co. v. Atlanta Realty Corporation (Sup. Ct. of Ga.), 170 S. E. 791; State Revenue Commission v. Rich (Ga.), 175 S. W. 394; Motor Dealers Credit Corporation v. Heise (Sup. Ct. of S. C.), 164 S. E. 900; Ferris v. Chic. Mint Gum Co., 14 Del. Ch. 232; New York v. Maclay, 288 U. S. 290. This Act has been considered in the following cases: Johnston & Burnham, Inc., v. State, 95 S. W. (2d) 144; Wright v. State, 71 S. W. (2d) 352; In re White Star Ref. Co., 74 Fed. (2d) 269; Ex parte Klugsberg, 87 S. W. (2d) 465.

The Court of Civil Appeals erred in holding that the bonds issued by the Star Refining & Producing Company were superior to the taxes claimed by the State.

■ It is contended by some of the intervenors, if not by all of them, that Section 7, in creating a lien to secure the motor fuel tax and providing that such lien should be prior and superior to all other liens, speaks prospectively and not retrospectively, and has no application to contractual liens accruing prior to the passage of the Act; the priority of the State's lien over other liens being limited to those liens, contractual or statutory, accruing subsequent to the passage of such Act.

The burden of levying taxes rests on the Legislature, and that body has plenary power of prescribing the mode of taxation to raise revenue; and the specification of certain objects

and subjects of taxation in the Constitution does not prevent it from passing laws requiring other subjects or objects to be taxed, unless expressly prohibited by the Constitution. (Section 17 of Article 8, Constitution.)

■ It has been demonstrated that only a small per cent of the amount of funds necessary to maintain the State government is raised under the ad valorem tax plan. The Legislature has been compelled to resort to other methods of raising revenue to meet the demands of our expanding State government. Hence Articles 7065a, 7047, and others of the Revised Civil Statutes were enacted. It is well known that Article 7065a is the State's greatest revenue producer. Section 41a of Article 7047 imposes an occupation or excise tax on every person in Texas manufacturing or importing cement, and who thereafter distributes, sells or uses the same in intrastate commerce. Likewise, the law imposes an occupation or excise tax on several other occupations, and gives the State a preference lien on the property used in connection with such occupations. See Section 45 of Article 7047, Section 8 of Article 7047c, Section 5b of Article 7047b, Article 7047f, Article 7047g, and Article 7057a.

It may well be admitted that the rule fixed in this Act may appear to be harsh, and will cause hardships to those who in good faith have acquired liens on property prior to the time when taxes may be due the State under this law. The Legislature has seen fit, in the exercise of its power and discretion, to so declare that to be the public policy of this State. *The history of this Act and the language used therein leaves no doubt as to the clear intention of the Legislature to declare all liens, regardless of the time when such liens originated, upon the property used by the distributor, described in said Act, to be inferior to the claim and lien of the State fixed by this law.*

■■ It appears that the Legislature has adopted this mode of taxation in order to obtain revenue to support the State government. It is the duty of the courts to uphold such legislation, unless it clearly appears to violate some provision of our Constitution. The decisions above cited tend to uphold such legislation. This Court holds that the Act in question is a valid exercise of the power delegated by the Constitution to the Legislature to levy taxes. If same is unjust and needs amending, that power rests exclusively with the Legislature.

■ The State further contends that the trial court and the Court of Civil Appeals erred in holding that on April 30, 1935, the Star Refining & Producing Company was insolvent. In the case of Price v. United States, 269 U. S. 492, the facts in-

volved were similar to the facts in this case. In that case the petition prayed for the appointment of a receiver to take possession of the assets involved therein, and that the assets be sold and the proceeds distributed to those entitled thereto. The defendant filed its answer and adopted the bill of complaint filed by plaintiff, and consented to the appointment of a receiver. The Supreme Court of the United States held that where all parties had joined in a prayer for the appointment of a receiver to take charge of the assets of a business, the question of insolvency was presented for determination. See also People v. Maclay, 288 U. S. 290, 77 L. Ed. 754; Spokane v. United States, 279 U. S. 80.

The evidence and pleadings in this case raise the question of the insolvency of the Star Refining & Producing Company. The trial court found that such company was insolvent, and the Court of Civil Appeals affirmed that holding. This Court under this record is not justified in setting aside such finding of the trial court and Court of Civil Appeals. This contention is overruled.

■ It is also contended that the lower courts erred in holding that the United States was entitled to a preferential payment of its claim for taxes by virtue of Section 3466, Revised Statutes, Section 191, Title 31, USCA. Said Section 3466 provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The United States asserted that its claim for taxes was secured by a preference lien, and was superior to all other liens, and particularly that asserted by the State. The United States did not appeal from the judgment of the lower courts. Counsel for the United States do not question the correctness of the judgment decreeing to certain lien holders rights superior to that of the United States. As we understand their contention, it is based on the proposition that, if this Court should hold the claim of the State is superior to those of the lien holders, then, in that event, it is claimed that the claim of the United States should be declared superior to the claim of the State.

The United States must rely for the enforcement of its claim for taxes on Section 3466 and Section 3186 R. S. U. S., 31 U. S. C. A., Section 191, and 26 U. S. C. A., Sections 1560, 1561, and 1562. Since these are acts of Congress, the decisions of the Supreme Court of the United States construing them are decisive with this Court. Section 3466 has been construed by the Supreme Court of the United States many times. We will cite only some of the cases: United States v. Oklahoma, 261 U. S. 253; Spokane County v. United States, 279 U. S. 80; New York v. Maclay, 288 U. S. 290; United States v. Knott, 298 U. S. 544.

■ Valid and enforceable liens created by statute, and not solely dependent upon a levy of any character for their inception, and in existence prior to bankruptcy, are not affected by the laws relating to bankruptcy. Section 64 (11 USCA, sec. 104) has no reference to valid lien debts, and claims entitled to priority of payment by this section would not take precedence over claims secured by valid liens. In re Cardwell, 52 Fed. Rep. (2d) 158; City of Richmond v. Bird, 249 U. S. 174, 39 S. Ct. 186, 63 L. Ed. 543; Lott v. Salsbury (C. C. A.), 237 Fed. 191; In re Yoke Vitrified Brick Co. (D. C.) 180 Fed. 235; Globe Bank & Trust Co. v. Martin, 236 U. S. 288, 35 S. Ct. 377, 59 L. Ed. 583; Collier, p. 1438.

■ It is now settled that the priority afforded the United States under Section 3466 applies when the person owing such tax is insolvent, or when a receiver is appointed to take charge of the assets. In construing this section, in the case of United States v. Oklahoma, 261 U. S. 253, it is said:

"The claim of the United States to the asserted priority rests exclusively upon the statute. No lien is created by it. It does not overreach or supersede any bona fide transfer of property in the ordinary course of business. It establishes priority which is limited to the particular state of things specified. The meaning of the word 'insolvent' used in the act and of the insolvency therein referred to is limited by the language to cases where 'a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment,' etc. Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part."

In the case of United States v. Knott, supra, it is said:

"Revised Statutes, sec. 3466, provides that 'whenever any person indebted to the United States is insolvent' 'the debts due to the United States shall be first satisfied.'

\* \* \* \* \*

"The question for our decision is the legal effect upon the asserted federal right of the statute so construed. As was said in Thelusson v. Smith, 2 Wheat. 396, 426: 'The United States are to be first satisfied; but then, it must be out of the debtor's estate. If, therefore, before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a *fi. fa.*, the property is divested out of the debtor, and cannot be made liable to the United States.' See also Beaston v. Farmers' Bank of Delaware, 12 Pet. 102, 135-136.

\* \* \* \* \*

"It is true that the priority statute is not applicable unless insolvency has been manifested by some proceeding equivalent to an assignment of all of the debtor's property, United States v. Oklahoma, 261 U. S. 253, 262; United States v. Hooe, 3 Cranch 73, 91."

Section 1560 reads:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 1561 provides for the period of lien as follows:

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

Section 1562 further provides:

"Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—" Provision is made for filing notice in accordance with the laws of the State or in the office of the Clerk of the United States District Court in the district in which the property subject to the lien is situated.

In the case of Savings Society v. Multnomah County, 169 U. S. 421, the Supreme Court of the United States, at page 428, said:

"This court has always held that a mortgage of real estate made in good faith by a debtor to secure a private debt, is a conveyance of such an interest in the land, as will defeat the priority given to the United States by act of Congress in the distribution of the debtor's estate. United States v. Hooe, 3 Cranch, 73; Thelusson v. Smith, 2 Wheat 396, 426; Conrad v. Atlantic Ins. Co., 1 Pet. 386, 441."

■ Thus it is seen that the State and Federal laws involved here are radically different. It will be observed that the assessment and collection of taxes arising under Article 7065a are different from the assessment and collection of taxes under the general statutes regulating the assessment and collection of taxes. See Title 122, Revised Civil Statutes, Section 7 of Article 7065a gives the State a preferred lien against specific property used by the distributor. The language used clearly shows that it was intended to give the State a specific and prior lien over all other liens outstanding against such property, for the payment of taxes due the State. Such tax shall accrue and be paid upon the first sale in Texas. The Act then describes what constitutes the "first sale"; and the tax due thereon shall be due and payable at the office of the Comptroller on the 20th day of each month. In Section 3466, regarding the lien afforded the United States, it is declared that: "Whenever any person indebted to the United States is insolvent * * * the debt due the United States shall be first satisfied." This section creates no lien. In Section 1562 it is clearly stated that such lien provided for in Section 1560 shall not be valid as against any mortgagee, purchaser, or judgment creditor, until notice thereof has been filed by the collector.

■ Under the decisions of the Federal courts, bona fide transfers of property and valid liens held by mortgagees, in existence at the time the tax is due the United States, shall be superior to the claim of the United States, and such liens take precedence over the claim of the United States under the Federal statutes just cited. Counsel for the United States concede this. The State has declared its claim to be prior to all other claims. The United States recognizes certain rights as being prior to its claim. At most, the claim of the United States is second. But it is contended that the claim of the United States should be ranked prior to the claim of the State. Such reasoning would make the claim of the State third in

rank and would place the claims of the United States and the lienholders prior to the claim of the State. In order to give the United States precedence over the State in this case, this Court would be compelled to hold, in construing Section 7 of Article 7065a, that the claims held by the State thereunder should be inferior to those of lienholders and the claim of the United States. Such a holding would absolutely nullify that Section and destroy the clear intention of the Legislature expressed therein.

It is undisputed that the liens decreed by the trial court to be preference liens were fixed before the claims of the United States and of the State arose. We consider the holders of such liens as coming under the class of mortgagees as defined in Section 1562. So far as we know, the precise question involved here has never been decided by the Supreme Court of the United States. We therefore hold that the claims involved here are ranked as follows: that of the State first; those of the mortgagees, in accordance with the priorities decreed between them by the trial court, second; that of the United States third; and those of the other creditors, not awarded liens described in the judgment of the trial court, fourth.

The right to enforce the lien of the State against a homestead is not involved here, and we therefore express no opinion on that question.

■ The State also contends that the trial court and Court of Civil Appeals erred in holding that the State had no lien to secure the payment of the taxes due the State on the nine tanks belonging to the Star Refining & Producing Company, on which James Harrison held a lien, and which had been transferred to the said James Harrison prior to the receivership proceedings.

The trial court found that "about ninety days before the filing of a receivership suit, or about the 30th day of April, 1935," and after default in such chattel mortgage note, the Star Refining & Producing Company agreed to deliver to James Harrison such tank cars, in full satisfaction of the debt sued upon.

The trial court found that the title to the nine tank cars was vested in James Harrison ninety days prior to the time the suit was filed on the 30th day of April, 1935. Under the provisions of Section 7 a preference lien is given the State for taxes due, over the claims of other lienholders. This preference is given specifically by the terms of said section, and such preference extends to the property owned or used by a company as a distributor, as defined in Section 7. The United States has no claim on the nine tank cars, and counsel for the

United States, as we understand it, do not contend that the United States has a lien on same. The State of Texas has a preference lien on the nine tank cars, for the taxes due by the Star Refining & Producing Company up to the time that the Star Refining & Producing Company parted title to such nine tank cars and same passed to James Harrison. The trial court and the Court of Civil Appeals erred in holding that the nine tank cars were exempt from taxes due the State.

We have considered the other assignments presented, and they are overruled.

Both the judgment of the trial court and that of the Court of Civil Appeals will be reversed, and this cause will be remanded to the trial court for further proceedings in conformity with this opinion.

Opinion delivered December 6, 1939.

Rehearing overruled March 6, 1940.