**PECOS COUNTY STATE BANK et al.,**
**Appellants,**

v.

**The STATE of Texas, Appellee.**

No. 11842.

Court of Civil Appeals of Texas,
Austin.

June 23, 1971.

Rehearing Denied July 7, 1971.

Johnson & Dionne, Fort Stockton, John F. Tomlin, Pecos, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., and John R. Grace and Wardlow Lane, Asst. Attys. Gen., Austin, for appellee.

PHILLIPS, Chief Justice.

The State of Texas brought this suit against Appellants and others to enforce its tax liens against property in which the Appellants and other defendants to the original suit claimed some interest. The cause of action presently before us was severed from the original suit. Both the Appellants and the State filed motions for summary judgment.

The trial court granted the State's motion and denied the Appellants' motion holding that the State's tax lien granted under Article 1.07, Title 122A, Taxation-General, V.A.T.S., was superior to the liens and title of Appellants in and to the property.

We affirm.

Appellants are before us on four points of error, the gist of which is the error of the court in holding the State's lien on the farm equipment superior to that of the Appellants.

We overrule these points.

The lien in question is asserted against three tractors and attendant equipment. It is stipulated that the equipment was purchased by Sun Valley Farms, Inc. on March 30, 1966 with part of the purchase price being evidenced by a promissory note payable to the order of Fort Stockton Im-

plement Company and secured by a chattel mortgage on the equipment filed in the Chattel Mortgage Records of Pecos County. This mortgage was assigned and transferred to John Deere Company. A bill of sale dated June 27, 1967, filed for record July 26, 1967, showed a conveyance to Charles W. Hilliard. On December 22, 1967, John Deere Company repossessed this equipment.

On March 6, 1968, Cooper, Hughes and Sullivan, who are also Appellants here, purchased the equipment from John Deere Company for the unpaid balance due on the note paying $6,578.93 from their own funds and borrowing the balance of $20,000 from Pecos County State Bank. John Deere Company transferred the purchase money note and lien of March 6, 1968 to Pecos County State Bank.

The State filed a notice of tax lien in Dallas County, designated to be the principal place of business of Sun Valley Farms, Inc., on November 30, 1967, and in Pecos County on March 12, 1968. This was done under the provisions of Article 12.13, Title 122A, Taxation-General, V.C.S.

Appellants did not have actual notice of the State's claim against Sun Valley Farms, Inc. and on March 6, 1968 when Cooper et al purchased the equipment from the John Deere Company there was no instrument of record in the office of the County Clerk of Pecos County giving notice of the State's claim for such taxes.

However, all of the delinquent franchise taxes due by Sun Valley Farms, Inc. had become due and owing before it conveyed the property in question to Hilliard on June 27, 1967.

Article 1.07, Title 122A, Taxation-General, V.C.S., as it read prior to January 1, 1970, and at the time the tax lien here in question arose, is, in part, as follows:

"All taxes, fines, penalties and interest due by an individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee or receiver to the State of Texas, by virtue of this Title, shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated upon all the property of any individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee or receiver. *This lien shall be cumulative, and in addition to the liens for taxes, fines, penalties, interest now provided by law, and shall attach as of the date such tax or taxes are due and payable * * *"* (Emphasis added)

■ Under this statute the lien became effective when the taxes became due and owing (May 1st of each year; see Attorney General Opinion 1942, No. –0-4582) and this lien was first and prior to all other liens regardless of when created. Article 1.07 had no provision for recording tax liens; however, Article 1.07A, also in force at the time this lien arose provided that "every county clerk" should record "'State Tax Liens' * * * on the filing of tax claims under the provisions of this Act." It will be noted that the validity of the lien was not conditioned on the filing of notice and it was only under Article 1.07B which dealt with real estate was proper recording a condition precedent to the validity of the lien. Article 1.07B, as it existed when the tax liens here in question arose, provided for recording as follows:

"When any state tax lien has been so recorded and indexed, *it shall, from the date of such record and index,* operate as a lien upon all of the *real estate* of the person * * * (Emphasis added)

The effect of the priority provisions of Article 1.07 has been upheld by this Court in Allied Finance Co. v. State of Texas, 387 S.W.2d 435 (Tex.Civ.App., Austin, 1935, error ref. n. r. e.); State of Texas v. Rope, 419 S.W.2d 890 (Tex.Civ.App., Austin, 1967, ref. n. r. e.).

Appellants contend that Article 12.13 of Title 122A dealing with Franchise Taxes

provided (prior to the 1969 amendment thereof) for recording of delinquent franchise taxes and penalties by the Secretary of State not only in the principal place of business of the corporation in question but also "with the clerk of any county in which he has reason to believe any corporation owing franchise taxes and penalties has real or personal property * * *" Granting Appellants' argument that both Articles 1.07 and 12.13 must be read in pari materia and that the specific (Article 12.13) controls the general (Article 1.07), Article 12.13 does not make the recording of the lien a condition precedent to its validity. The statute states unequivocally that "the State shall have a prior lien on all corporate property for all franchise taxes and penalties * * *"

These statutes, apparently, intended recording to be a condition precedent to the validity of these liens only in the case of real estate. It is interesting to note that Article 1.07 as amended (January 1, 1970) now provides that "No lien provided for by Title 122A shall be effective as against any bona fide mortgagee * * * in any real estate or personal property of the taxpayer prior to the filing, recording and indexing of such lien in the county where the real estate is situated, and for personal property, in the county of the residence of the taxpayer at the time that said tax became due and payable or in the county in which said taxpayer filed his report."

 Thus, as the law now stands, proper recording is necessary to the validity of the lien with respect to personal property as well as real estate.

State v. Wynne, 134 Tex. 455, 133 S.W. 2d 951, appeal dism., 310 U.S. 610, 60 S.Ct. 980, 84 L.Ed. 1388, in holding that in a receivership proceeding the motor fuel tax lien of the State was first and prior to the claim of the United States under the priority statute (31 U.S.C.A. Section 191) and prior to the lien claim of one holding a deed of trust securing first mortgage bonds, said: "The rule is generally accept-

ed in this State that all property rights acquired and held, and all contracts made, are subject to the authority of the State to levy its taxes and collect its revenues for the support of the government."

 The question of whether or not a statutory lien is to have priority over other liens and the manner of establishing this priority is one of legislative intent to be derived from the language of the statutes. State v. Wynne, supra, 84 C.J.S. Taxation § 599, p. 1207.

The judgment of the trial court is affirmed.