648 F.2d 364
 In the Matter of TIGERT PRINTING COMPANY, INC., Debtor.
Tigert Printing Company, Inc., d/b/a Printing Services, Inc., Appellee,
v.
COMPTROLLER OF PUBLIC ACCOUNTS FOR the STATE OF TEXAS, Appellant.
 No. 80-2339
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit A
 June 18, 1981.
 Bradley Seals, Asst. Atty. Gen., Austin, Tex., for appellant.
 Tim Vineyard, Joseph A. Pitzinger, III, Dallas, Tex., for appellee.
 Appeal from the United States Bankruptcy Court for the Northern District of Texas.
 Before GEE, RUBIN and RANDALL, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 The Comptroller of Public Accounts for the State of Texas (the Comptroller) brings this appeal from a judgment of the United States Bankruptcy Court for the Northern District of Texas in a proceeding instituted by Tigert Printing Co., Inc. (Tigert), a debtor in possession under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. (1979 Supp.). In that proceeding Tigert sought to recover money on deposit in its savings account at Dallas National Bank (Dallas National) but claimed by the Comptroller (as intervenor in this action) under a written assignment of the account from Tigert.[1] The bankruptcy court found that the security interest acquired by the Comptroller through the assignment had never been recorded in accordance with article 1.07(1)(c) of the Texas Taxation-General statutes, Tex. Tax.-Gen. Ann. art. 1.07(1)(c) (Vernon 1969); that the Comptroller's security interest had therefore not been perfected; and that Tigert could consequently avoid the security interest through powers vested in a debtor in possession by the Bankruptcy Code, 11 U.S.C. §§ 544, 1107 (1979 Supp.). On appeal, the Comptroller argues that the notice requirement of article 1.07(1)(c) does not apply to the security interest created by the assignment, as that interest is a common law pledge and thus outside the reach of article 1.07(1)(c). Tigert agrees that the assignment is indeed a common law pledge, and we therefore assume without deciding that this is so. We agree with the Comptroller's further contention that a common law pledge need not be recorded under article 1.07(1)(c), and we therefore reverse the judgment of the bankruptcy court.
 
 
 2
 I. THE PARTIES' RESPECTIVE CLAIMS TO THE SAVINGS ACCOUNT
 
 
 3
 On August 1, 1977, Tigert executed and delivered to the Comptroller an agreement assigning a Dallas National savings account totalling $7,500 to the Comptroller as security for sales and use taxes which might thereafter accrue under state law.[2] This assignment was intended to meet the requirement of article 20.021(N) of the Texas Taxation-General statutes, which requires each applicant for a sales tax permit to furnish the Comptroller with sufficient security for the payment of such taxes.[3]
 
 
 4
 The Comptroller argues that this assignment created a common law pledge under Texas law. Recourse to common law security interest concepts is necessary in this case because of the Uniform Commercial Code's explicit exclusion of transactions which transfer an interest in deposit accounts.[4] Under the common law of Texas, a pledge arises when a debtor transfers to a creditor possession of certain collateral as security for a debt owed by the debtor to the creditor, the transfer being subject of course to a right of redemption in the debtor. E. g., McAllen State Bank v. Texas Bank & Trust Co., 433 S.W.2d 167, 171 (Tex.1968). Although Tigert did not transfer physical possession of the savings account, the Comptroller argues that Tigert transferred constructive possession because of its notice to Dallas National of the assignment and its authorization to Dallas National to pay the amount in the account directly to the Comptroller on his demand. See Central National Bank v. Latham & Co., 22 S.W.2d 765, 768 (Tex.Civ.App. Waco 1929, writ ref'd); Davis & Goggin v. State National Bank, 156 S.W. 321, 327-28 (Tex.Civ.App. El Paso 1913, writ ref'd).
 
 
 5
 The bankruptcy court characterized the assignment as an "equitable lien," but Tigert now agrees with the Comptroller that the assignment is instead a common law pledge. Brief for Appellee at 6. Since the parties are in agreement on this point, we will assume without deciding that the assignment is indeed a common law pledge. We intimate no view on the validity of this assumption.
 
 
 6
 In order to avoid the Comptroller's security interest in the account, Tigert points to the Comptroller's failure to record its common law pledge in accordance with article 1.07(1)(c) of the Texas Taxation-General statutes.[5] That article requires recordation for any "lien provided for by Title 122A (the Taxation-General statutes);" article 20.021(N), which requires applicants for sales tax permits to furnish security for their tax obligations to the Comptroller, is indeed contained in Title 122A. Tigert reads the phrase "lien provided for by Title 122A" to include all liens which, like the pledge now at issue, are granted to the state in order to comply with some article contained in Title 122A (in this case article 20.021(N)). The Comptroller argues, on the other hand, that article 1.07(1)(c) cannot reasonably be read to require recordation of a lien which, like the Comptroller's common law pledge, could otherwise be perfected by possession rather than by filing; according to the Comptroller, the phrase "lien provided for by Title 122A" refers only to those liens which are actually created or authorized by Title 122A, i. e., statutory tax liens such as that prescribed by article 1.07(1)(b).[6]
 
 
 7
 The bankruptcy court adopted the broader interpretation urged by Tigert. As the court explained:
 
 
 8
 Thus, Article 1.07 provides that any lien taken to secure payment of sales taxes must be recorded
 
 
 9
 Opinion of the Bankruptcy Court at 3 (emphasis added). The question now before us is whether this expansive interpretation of article 1.07(1)(c) is correct; for the reasons expressed below, we agree with the Comptroller that this article cannot reasonably be read so broadly and that the bankruptcy court's construction of the article was therefore incorrect.
 
 
 10
 II. THE APPLICABILITY OF ARTICLE 1.07(1)(c) TO A COMMON LAW PLEDGE GRANTED TO THE COMPTROLLER IN COMPLIANCE WITH ARTICLE 20.021(N)
 
 
 11
 The interpretation of article 1.07(1)(c) urged by Tigert and adopted by the bankruptcy court is based on an extremely broad reading of the term "provided for," which is apparently assumed to include the term "required by," since the common law pledge at issue here was at most required by Title 122A and certainly was not created or authorized by that title. While we cannot say that this interpretation of article 1.07(1)(c) is precluded by its admittedly ambiguous coverage of all liens "provided for by Title 122A," the interpretation is contrary both to the nature of a pledge and to the apparent purpose of the recordation requirement.
 
 
 12
 The essential prerequisite for any common law pledge is possession, for it is the creditor's actual or constructive possession of the collateral which provides notice to the world of the creditor's security interest. Possession is in practice an alternative to public recordation of a security interest; a lien based on possession need not also be recorded. See 4B Collier on Bankruptcy P 70.86 (1978). Thus, the Uniform Commercial Code explicitly excludes from its filing requirement any security interest perfected by the secured party's possession of the collateral; as the Official Comments to the Code note, this rule follows the practice "at common law, (where) there is no requirement of filing when the secured party has possession of the collateral in a pledge transaction." Tex.Bus. & Comm.Code Ann. § 9.302(a)(1) and Comment 2 (Vernon 1968).
 
 
 13
 We do not think that the Texas legislature intended to change the ancient concept of the common law pledge by its article 1.07(1)(c) requirement of recordation for all liens "provided for by Title 122A." Prior to the addition of article 1.07(1)(c) to the Texas Taxation-General statutes in 1969, state tax liens on personal property were accorded priority over all other liens whether or not the state recorded the tax lien. This created a tremendous hardship for those creditors who in good faith relied on the public records as evidence of their priority. See State of Texas v. Wynne, 134 Tex. 455, 133 S.W.2d 951 (1939), appeal dismissed, 310 U.S. 610, 60 S.Ct. 980, 84 L.Ed. 1388 (1940); Allied Finance Co. v. State of Texas, 387 S.W.2d 435 (Tex.Civ.App. Austin 1965, writ ref'd n. r. e.). Although neither party has cited any published legislative history of article 1.07(1)(c), we think it obvious that that article was intended to alleviate the hardship caused by unrecorded state tax liens. No such hardship would be caused where notice to the world follows from the state's possession of the collateral, and therefore the purpose of article 1.07(1)(c) would not be furthered by the recordation of a common law pledge. Finally, we note that article 20.021(N) was enacted in 1973, several years after the passage of article 1.07(1)(c).
 
 
 14
 We conclude that article 1.07(1)(c) cannot reasonably be read to require recordation of a common law pledge granted to the state pursuant to the requirement of article 20.021(N). We reverse the judgment of the bankruptcy court and remand this case to the bankruptcy court for entry of judgment consistent with this opinion.
 
 
 15
 REVERSED and REMANDED.
 
 
 
 [1]
 By agreement of the parties, this appeal is brought directly to the Court of Appeals under 28 U.S.C. § 1293(b) (1979 Supp.)
 
 
 [2]
 The assignment reads in pertinent part as follows:
 Tigert Printing Co., Inc. does hereby assign, and set over to the Comptroller of Public Accounts of the State of Texas, all right, title and interest of whatever nature, of assignor, in and to the insured account of assignor in the Dallas National Bank evidenced by savings account $ 7000731 in the amount of $7,500 Assignor agrees that this assignment includes and gives the right to (the Comptroller) to redeem, collect, and withdraw any part or the full amount of such account at any time WITHOUT NOTICE TO THE ASSIGNOR. This assignment is given as security for liability for sales and use taxes, including interest and penalties, which may accrue under the state and local sales and use tax laws of the State of Texas.
 This assignment was signed by the president of Tigert; Dallas National's receipt of the assignment was acknowledged at the end of the document by the signature of the president of Dallas National.
 
 
 [3]
 Article 20.021(N)(1) of the Texas Taxation-General statutes, Tex.Tax.-Gen. Ann. art. 20.021(N)(1) (Vernon 1969), provides in pertinent part as follows:
 (E)very applicant for a sales tax permit on or after January 1, 1974, shall furnish to the Comptroller a cash bond, a bond from a surety company chartered or authorized to do business in the State of Texas, certificates of deposits, certificates of Savings or U.S. Treasury bonds or, subject to the discretion and approval of the Comptroller, an assignment of negotiable stocks or bonds, or such other security as the Comptroller may deem sufficient to secure the payment of taxes under this Chapter The Comptroller shall fix the amount of such bond or security in each case, taking into consideration the amount of money that has or is expected to become due from such person under this Chapter and under the Local Sales and Use Tax Act. The amount of the bond or security required by the Comptroller shall be such as will protect the State of Texas against failure to pay the amount which may become due from such person under this Chapter and under the Local Sales and Use Tax Act, but the amount of the bond or security required by the Comptroller shall not exceed three (3) times the amount of such person's average quarterly tax liability, or Fifty Thousand Dollars ($50,000.00), whichever is lower.
 
 
 [4]
 Tex.Bus. & Comm.Code Ann. § 9.104(12) (Vernon 1980 Supp.) provides that article nine of the Code (secured transactions) shall not apply:
 to a transfer of an interest in any deposit account except as provided with respect to proceeds (Section 9.306) and priorities in proceeds (Section 9.312).
 "Deposit account" is defined to include a savings account by Tex.Bus. & Comm.Code Ann. § 9.105(a)(5) (Vernon 1980 Supp.).
 
 
 [5]
 Article 1.07(1)(c) of the Texas Taxation-General statutes, Tex.Tax.-Gen.Ann. art. 1.07(1)(c) (Vernon 1969), provides as follows:
 No lien provided for by Title 122A shall be effective as against any bona fide mortgagee, holder of a deed of trust, purchaser or judgment creditor or any other person who for a bona fide consideration has acquired a lien, title or other right or interest in any real estate or personal property of the Taxpayer prior to the filing, recorded and indexing of such lien in the county where real estate is situated, and for personal property, in the county of the residence of the taxpayer at the time that said tax became due and payable or in the county in which said taxpayer filed his report.
 
 
 [6]
 Article 1.07(1)(b) of the Texas Taxation-General statutes, Tex.Tax.-Gen.Ann. art. 1.07(1)(b) (Vernon 1969), provides as follows:
 All taxes, fines, penalties and interest due by any person to the State of Texas by virtue of this Title shall be secured by a lien upon all property of the person owing the taxes subject to execution, owned at the time the lien attaches. As to the person liable for such taxes the lien shall attach to all of his property as of the date the tax is due and payable.