118

## STILWELL COMPANY v. COMMISSIONER OF TAXATION.

100 N. W. (2d) 504.

December 31, 1959—No. 37,765.

*Donald L. Robertson* and *Jack D. Gage,* for relator.

*Miles Lord,* Attorney General, and *Jerome J. Sicora,* Special Assistant Attorney General, for respondent.

*John W. Windhorst, Charles O. Howard,* and *Dorsey, Owen, Scott, Barber & Marquart,* for First Bank Stock Corporation, amicus curiae.

KNUTSON, JUSTICE.

Certiorari upon the relation of Stilwell Company to review an order

The facts involved in this proceeding have been stipulated by the parties. Relator is a corporation existing under the laws of the State of Minnesota. The taxable year of the corporation is the fiscal year beginning on December 1 and ending on November 30, and it keeps its books and files its income tax returns on an accrual basis.

For each of the fiscal years ending November 30, 1952, and November 30, 1953, relator filed income tax returns with the commissioner of taxation of the State of Minnesota and paid to him at the times prescribed by law the taxes so computed to be due.

The assets of relator as of December 1, 1951, and the cost at which such assets were acquired by relator are as follows:

| Assets | Cost |
| --- | --- |
| Cash | $48,355.87 |
| Notes Receivable | 35,133.69 |
| Contract for Deed | 1,191.57 |
| Bonds—Government and Corporate | 225,929.69 |
| Minnesota Real Estate | 700.00 |
| Accrued Interest | 1,541.42 |
| Stocks—Common and Preferred | 263,389.69 |
| Total | $576,241.93 |

None of the assets in the above summary are depreciable.

The assets of relator as of November 30, 1952, and the cost at which such assets were acquired by relator are as follows:

| Assets | Cost |
| --- | --- |
| Cash | $39,305.23 |
| Notes Receivable | 61,109.33 |
| Contract for Deed | 761.37 |
| Bonds—Government and Corporate | 190,929.69 |
| Minnesota Real Estate | 700.00 |
| Accrued Interest | 3,496.07 |
| Stocks—Common and Preferred | 284,242.27 |
| Total | $580,543.96 |

None of the assets in the above summary are depreciable.

The assets of relator as of December 1, 1952, and the cost at which such assets were acquired by relator are as follows:

| Assets | Cost |
| --- | --- |
| Cash | $39,305.23 |
| Notes Receivable | 61,109.33 |
| Contract for Deed | 761.37 |
| Bonds—Government and Corporate | 190,929.69 |
| Minnesota Real Estate | 700.00 |

| | |
|---|---|
| Accrued Interest | 3,496.07 |
| Stocks—Common and Preferred | 284,242.27 |
| | |
| Total | $580,543.96 |

None of the assets in the above summary are depreciable.

The assets of the relator as of November 30, 1953, and the cost at which such assets were acquired by relator are as follows:

| Assets | Cost |
|---|---|
| Cash | $43,089.49 |
| Notes Receivable | 58,233.46 |
| Bonds—Government and Corporate | 190,929.69 |
| Minnesota Real Estate | 700.00 |
| Accrued Interest | 4,215.03 |
| Stocks—Common and Preferred | 281,397.03 |
| | |
| Total | $578,564.70 |

None of the assets in the above summary are depreciable.

Relator's adjusted gross income for the fiscal year ending November 30, 1952, consisted of the following:

| Item | Amount |
|---|---|
| Interest from government and corporate bonds | $5,965.46 |
| Dividends from preferred and common stocks | 20,647.88 |
| Allowable capital loss from sale of stock rights | (5.29) |
| | |
| Total | $26,608.05 |

Relator's adjusted gross income for the fiscal year ending November 30, 1953, consisted of the following:

| Item | Amount |
|---|---|
| Interest from corporate and government bonds | $6,131.77 |
| Dividends from preferred and common stocks | 19,420.52 |
| Refund of Federal income tax | 20.55 |
| Miscellaneous | 2.65 |
| Allowable capital loss from the sale of stock | (461.78) |
| | |
| Total | $25,113.71 |

On August 1, 1957, the commissioner of taxation of the State of Minnesota assessed additional income tax and interest against relator in the sum of $950.58, tax, and $169.70, interest, for the fiscal year ending November 30, 1952, and $862.02, tax, and $119.33, interest, for the fiscal year ending November 30, 1953. Such additional assessments were occasioned by the commissioner's disallowance of the dividend received credit claimed by relator under M. S. A. 290.21(3)(a) on its income tax returns.

The stocks on which the dividends were paid, with respect to which relator claims the dividend received credit, did not constitute the stock in trade of relator; would not have been included in the inventory of relator; and did not constitute property held by relator primarily for sale to customers in the ordinary course of its business.

If the trade or business of relator consists principally of the holding of stocks and the collection of income and gains therefrom, the orders assessing additional income tax and interest from which this appeal has been taken should be affirmed. If the trade or business of relator does not consist principally of the holding of stocks and the collection of income and gains therefrom, the orders should be reversed.

The only question involved in this appeal is whether relator is entitled to a credit of 85 percent of the amount of dividends received from another corporation under and by virtue of § 290.21, which as far as material here reads:

"The taxes imposed by this chapter shall be on, or measured by, as the case may be, the taxable net income less the following credits against it:

\* \* \* \* \*

"(3)(a) 85 percent of dividends received by a corporation during the taxable year from another corporation \* \* \* when the trade or business of the taxpayer does not consist principally of the holding of the stocks and the collection of the income and gains therefrom."

Relator contends that under this statutory provision a corporation must be principally engaged in the holding of stock and principally engaged in collecting income and gains therefrom in order to be excluded from this credit. In other words, relator claims that use of the

conjunctive "and" requires that the stock held in other corporations must constitute a principal amount of its assets and that the income therefrom must also constitute the principal income of the corporation; that if either the stock or the income fails to meet the test, the credit is available. It argues further that, if the stock is to constitute the principal assets of the corporation, it must consist of more than 50 percent of the cost of the corporate assets. Likewise, it argues, the income from dividends on such stock must constitute more than 50 percent of the corporate income for any taxable year or it is entitled to the credit. Relator, in other words, seeks to construe the word "principal" as synonymous with "majority."

An examination of the figures above discloses that for the taxable years involved the stock held by the corporation constituted 49 percent of all corporate assets for the fiscal year commencing November 30, 1952, and 48.6 percent for the fiscal year commencing November 30, 1953. The income from dividends on such stock comprised about 77 percent of the total income of the corporation for each of the years involved. If the stock held and the income therefrom both must exceed 50 percent of all assets held and all income received, respectively, relator would be entitled to the claimed credit.

The statute gives no clue as to the proper interpretation of the word "principal." Among other definitions, Webster's New International Dictionary (1932) p. 1706, defines "principal" as "Highest in rank, authority, character, importance, or degree; most considerable or important; chief; main." Black, Law Dictionary (3 ed.) p. 1415, defines the word "principal" as "Chief; leading; most important or considerable; primary; original. Highest in rank, authority, character, importance, or degree."

None of the lexicographers defines "principal" as synonymous with "majority." That the term is a relative one is obvious. In construing this statute, our primary purpose is to ascertain legislative intent as near as we can. It would seem that the common-sense approach to interpretation of the statute does not limit our consideration entirely to either the amount of stock as compared with assets or the amount of income derived therefrom, or to a combination of both, but these facts, with

other facts, must be considered in determining as a fact question whether the business of the corporation consists mainly of the holding of stocks of other corporations and the collection of income and gains therefrom. In so doing, no mathematical rule can be announced which will apply to all cases. Determination of whether the statutory credit is available must rest on a finding of fact, and each case must rest on its own facts. In determining this fact question, the amount of stock owned by the corporation as compared with other assets; the income derived from stock as compared with total corporate income; and the nature of the business conducted must all be given consideration.

Here, we have nothing to go by except the stipulated facts showing the assets held by the corporation and the income derived from each class thereof. We have no difficulty with the income since about 77 percent of the income of the corporation consists of income from such stock, and, even if "principal" were synonymous with "majority," the income would constitute more than a majority of the entire income of the corporation. From all the evidence before us, an inference that the business of relator consists principally of holding stock and the collection of income and gains therefrom is justified.

Cases cited by relator are of little help. They do not apply to a statute such as ours and consist for the most part of a comparison of two things only. Here, more than two things must be compared in arriving at the ultimate conclusion. Edward P. Allison Co. v. Commr. of Int. Rev. (8 Cir.) 63 F. (2d) 553, involved an interpretation of the Federal Revenue Act of 1918, §§ 200 and 303. One of the questions there was whether a stockholder who held 27.27 percent of the stock was one of the principal stockholders of the corporation. In holding that she was a principal stockholder, the court said (63 F. [2d] 560):

"Petitioner argues that, 'The phrase "principal stockholders" to be given a normal construction must be held to mean those stockholders holding the larger interest as distinguished from those having a lesser interest.' We do not think this argument is sound. Suppose a corporation has three stockholders, each owning 33⅓ per cent. of the stock, which ones could be called the principal stockholders? Very clearly

all the stockholders would be regarded as principal stockholders. If a corporation had four stockholders, two owning 26 per cent. each of the stock, and two 24 per cent. each, under petitioner's theory the two owning the 26 per cent. would be the principal stockholders. What would the others be? The statute does not say *majority* stockholders, but *principal* stockholders."

The same could be said here. If the legislature had intended to provide that the corporation must own a majority of its assets in the stock of other corporations and collect a majority of its income from such stock, it could easily have said so. The statute does not so read, and we think, from the facts stipulated in this case, that the finding of the Board of Tax Appeals that this corporation was engaged principally in the holding of stock of other corporations and the collection of income or gains therefrom is clearly justified.

Affirmed.