The judgment is reversed and the cause is remanded.

**Ed GUMMELT, Sr. and Ed Gummelt, Jr.,**
Appellants,

v.

**SOUTHWESTERN INDEMNITY COMPANY, Appellee.**

No. 4071.

Court of Civil Appeals of Texas.

Waco.

Dec. 13, 1962.

Rehearing Denied Jan. 10, 1963.

Riley, Jones, Boyd, Westbrook & Lovelace, Waco, for appellants.

D. B. Kultgen, Waco, for appellee.

McDONALD, Chief Justice.

This case presents the question of the priority of the lien of the State of Texas for Special Fuels Tax under former Article 7065b–14(g) (now Art. 10.17 Taxation General Vol. 20A V.A.T.S.), over the prior lien of a private creditor; and also, presents the question of whether a surety on a bond guaranteeing payment to the State of taxes due, who pays such taxes, under such bond upon default by the taxpayer, is subrogated to the *priority* status of the State, in asserting such lien.

W. S. and W. B. Mosley operated a service station called "Ed's Service Sta-

tion." The station was operated on land owned by defendant (appellant) Ed Gummelt, Sr. At the station "Special Fuels" subject to tax under former Art. 7065b–14 (g) V.A.T.S. were sold. In 1956, the Mosleys executed a bond for $3000 to secure payment of their Special Fuels Tax. Plaintiff (appellee), Southwestern Indemnity Company, was surety on such bond. In 1957, the Mosleys defaulted, and Southwestern paid to the State $3000 as the bond required. The State (through the State Comptroller) assigned to plaintiff the State's claim. At the time of the Mosleys' default on the State tax, the Mosleys were the owners of certain equipment and certain accounts receivable.

In 1955, and prior to the foregoing, the Mosleys executed a note to the Community State Bank with Ed Gummelt, Sr. as a surety. Such note was secured by chattel mortgages on the equipment and supplies at the service station, and on the accounts receivable. The Mosleys defaulted on the note to the Community State Bank, and the balance due thereon, $2125.73, was paid off by the surety, Ed Gummelt, Sr. The bank assigned their debt and the lien securing same to Gummelt, Sr., who assigned to Gummelt, Jr. Gummelt, Jr. collected $3318.70 from the accounts receivable, and sold the equipment and supplies for $750, (for a total of $4068.70).

Plaintiff Southwestern, after paying the State the $3000 and taking assignment from the State, instituted this suit against the Gummelts, asserting that it, by virtue of the payment to the State and the assignment from the State, became subrogated to the lien of the State, and that such lien was superior to the lien assigned to the Gummelts. Plaintiff further alleged that defendants had notice of all of the facts, and that their acts in the premises constituted a conversion of the security (of the State assigned to plaintiff).

Trial was before the Court without a jury, which, after hearing, rendered judgment for plaintiff against Gummelt, Jr. for $3000 and against Gummelt, Sr. for a lien on the premises known as "Ed's Service Station" to secure payment of the $3000 (and for foreclosure of such lien).

Defendants appeal, contending:

1) Article 10.17 does not, of its own force, create a perfected lien, and until it is asserted and perfected by the State, (and thus attaches to specific property), it is an inchoate and general lien, to which there can be no subrogation.

2) Even if the State perfected its statutory lien, and plaintiff was subrogated thereto, it would be inequitable and contrary to public policy to allow further subrogation to the *statutory priority* of the State.

3) Even if the plaintiff be completely subrogated to the preferred lien of the State against the Mosleys, plaintiff cannot recover from defendant who has equities superior or at least equal to those of plaintiff.

Article 10.17 (formerly 7065b–14g) provides that all taxes due by any dealer "shall be secured by a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated," upon all of the property of any dealer used in the business, and upon all "accounts and notes receivable"; and upon "each tract of land * * * which is used in carrying on such business."

■ Thus the language of the statute itself resolves this first question: the State does have a priority lien for special fuels tax, over the prior lien of a private creditor, and that such lien is an attached lien to the property of the taxpayer used to conduct the business, his accounts receivable, and the real estate upon which the business is conducted. Such statute resolves such lien to be specific and perfected, as distinguished from an inchoate and general lien.

The foregoing is confirmed by State v. Wynne, 134 Tex. 455, 133 S.W.2d 951, which involved the State's claimed lien for motor fuel taxes under Art. 7065b-8 VAS (an almost verbatim copy of Art. 7065b4 (g), the provision here involved). Such case holds that the State has a lien superior to the liens of all private creditors, regardless of when created; and that the lien applies to all property used in the fuel dealer's business, even though the dealer does not own the property.

Plaintiff, a surety on the defaulting taxpayer's bond, paid the State the taxes due, and the Trial Court held that it was subrogated to the *priority* status of the State in asserting such lien. We think the Trial Court correct.

There may be subrogation of sureties to the right of the State. See Boaz v. Ferrell, Tex.Civ.App., (n. w. h.) 152 S.W. 200; Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423; Anderson v. Walker, 93 Tex. 119, 53 S.W. 821; New Amsterdam Cas. Co. v. 1st Nat. Bank, Tex.Civ.App., Er.Dis., Judg.Cor., 134 S.W.2d 470.

A surety who pays the principal's debt stands in the shoes of the original creditor as to any securities and rights of priority. Fox v. Kroeger, 119. Tex. 511, 35 S.W.2d 679, 77 A.L.R. 663. In such case our Supreme Court holds:

> "* * * we now announce the rule in Texas to be that, where the surety pays the debt of the principal, he has his election to either pursue his legal remedies and bring an action on an assumpsit, or the obligation implied by law in his favor for reimbursement by the principal; *or he can prosecute an action on the very debt itself, and in either event he stands in the shoes of the original creditor as to any securities and rights of priority.*"

From the foregoing we hold that the lien of the State of Texas was specific and attached, and a priority lien to defendants'

lien; and that plaintiff in discharging the Mosley's tax liability to the State of Texas, succeeded to the State's lien and to the State's priority status with reference to such lien.

Defendants' points are overruled and the judgment of the Trial Court is affirmed.