ALLIED FINANCE COMPANY, Appellant,

v.

STATE of Texas, Appellee.

No. 11209.

Court of Civil Appeals of Texas.

Austin.

Feb. 3, 1965.

Rehearing Denied March 3, 1965.

**436**

---

Locke, Purnell, Boren, Laney & Neely, J. L. Shook, John D. Crawford, Dallas, for appellant.

Waggoner Carr, Atty. Gen., H. Grady Chandler, J. H. Broadhurst, Asst. Attys. Gen., Austin, for appellee.

HUGHES, Justice.

This suit was brought by the State of Texas against Oakhurst Television and Supply Company, a corporation, and A. M. Fielding to recover taxes, interest and penalties alleged to be owed it under the provisions of Ch. 20, Article 20.01–20.20, inclusive, Title 122A, Taxation-General, Vernon's Ann.Tex.Civ.St.

Taxes in the sum of $9,378.02 were alleged to be due as a result of retail sales of radio and television sets by the defendants above named.

The State also alleged that it had had issued a writ of attachment which was levied on a 1960 Chevrolet Corvair automobile and a 1956 Ford one-half ton pickup truck as the property of such defendants and that Allied Finance Company had replevied such vehicles and that it claimed an interest or lien on such vehicles but that such lien or claim was inferior to the rights of the State. Allied Finance Company was made a party defendant.

Allied pleaded that it had liens on such vehicles created by compliance with Art. 1436–1 et seq. Vernon's Ann.P.C., and that its liens were superior to any claim or lien of the State. Allied also alleged that Arts. 20.13 and 1.07, Ch. 20, Title 122A were unconstitutional.

It was stipulated that the origin of the liens of Allied was a conditional sales contract executed February 16, 1960, and that Certificates of Title were issued by the Motor Vehicle Division of the State Highway Department on March 24 and March 25, 1960, for the two vehicles involved on which were respectively shown the liens above noted as the only liens against such vehicles.

It was also stipulated that subsequent to February 16, 1960, it was discovered that Oakhurst Television and Supply Company was indebted to the State in the amount of $9,378.02 excise taxes under Ch. 20, Title 122A, supra, by reason of the retail sale of radio and television sets, which taxes accrued between September 1, 1959 and December 31, 1960.

It was further stipulated that, "That there is no notation on either Certificate of Title, Exhibits 'B' and 'C', of a lien in favor of the State of Texas; (b) that there was no public record and index anywhere of the amount of taxes due and owing the State of Texas by Oakhurst T. V. & Supply Company and/or Al M. Fielding, on February 15th, 1960."

Other stipulations were made concerning the amount of taxes due, the bona fides of the parties and matters relating to the attachment and replevy which we do not particularize because no question is raised concerning them.

Trial, non-jury, resulted in judgment for the State against Oakhurst and Fielding for the amount sued for and judgment against Allied decreeing the lien of the State to be superior to its liens and rendering judgment against Allied and its replevy bond surety, Insured Lloyds, for $1700.00, the amount of its stipulated liability on the replevy bond in the event of an adverse judgment. Allied, only, has appealed.

The lien of the State upon the vehicles in suit arises by virtue of the following statutes:

Art. 1.07, Vol. 20A, V.T.C.S.,[1] which we quote:

"(1) All taxes, fines, penalties and interest due by an individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee, or receiver to the State of Texas, by virtue of this Title, shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, upon all the property of any individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee, or receiver. This lien shall be cumulative, and in addition to the liens for taxes, fines, penalties, and interest now provided by law, and shall attach as of the date such tax or taxes are due and payable."

Art. 20.13, Vol. 20A, V.T.C.S., which we quote:

"All taxes, penalties, interest and costs due by any retailer under the provisions of this Chapter and all taxes collected and required to be paid by said retailer to the State, shall be secured by a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, upon all the personal property of any retailer, devoted to or used in his business as a retailer, which property shall include equipment, inventories on hand of every kind and character whatsoever used or usable in such business, including cash on hand and in bank, accounts and notes receivable, and any and all other personal property of every kind

and character whatsoever or wherever situated devoted to such use."

These articles were both enacted in 1959. Acts 1959, 56 Leg. 3rd C.S., p. 187, Ch. 1.

The lien of Allied is by virtue of Art. 1436–1 of the Texas Penal Code, Motor Vehicles; Certificate of Title Act.

Section 1 of this Act provides, in part, that " * * * it is hereby declared to be the legislative intent and policy of this State to * * * prevent * * * the sale of encumbered motor vehicles * * * without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle * * * stands as security * * *"

Section 3 of the Act provides:

"Sec. 3. The term 'Lien' means every kind of lease, conditional sales contract, deed of trust, chattel mortgage, trust receipt, reservation of title, or other written instrument of whatsoever kind or character whereby an interest, other than absolute title, is sought to be held or given in a motor vehicle, also any lien created or given by Constitution or Statute."

Sections 42, 43, 44 and 46 of the Act provide:

"Sec. 42. No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon.

"Sec. 43. All liens on motor vehicles shall take priority according to the order of time the same are recorded on the receipt or certificate of title

---

1. This Article was supplemented by Arts. 1.07A and 1.07B, Acts 1961, 57th Leg., p. 201, Ch. 104, Secs. 2, 3.

of all such recordings to be made by the Department.

"Sec. 44. No lien on any motor vehicle to which a receipt or certificate of title has been issued shall be valid as against third parties without actual knowledge thereof, or enforceable against the motor vehicle of any such third parties, unless the notation of said lien shall have been caused to be made on receipts and certificates of title on said motor vehicle, as provided in this Act.

"Sec. 46. Only liens noted on a receipt or certificate of title shall be valid as against creditors of the mortgagor in so far as concerns the motor vehicle."

The above Act, originally enacted in 1939, has been amended several times but the sections above quoted have not been amended in or subsequent to the year 1959 except Sec. 1 which was amended in 1959 but not in a manner material to the quotation we have made therefrom.

■ It is obvious that if the motor vehicle Certificate of Title Act is applicable to the State in the present context, it has no lien on the two attached cars. We have concluded that it is not so applicable and that the liens of the State under Arts. 1.07 and 20.13, supra, are superior to the liens of appellant against these vehicles.

■ The general rule is that the State is ordinarily not within the purview of a statute unless the intention to include it is clearly manifest. 82 C.J.S. Statutes § 317, p. 554.

There is nothing in the Certificate of Title Act to indicate that it is applicable to the State in respect to its statutory lien here asserted. There is, however, evidence of legislative intent not to apply the Certificate of Title Act to the liens asserted here which is found in Arts. 1.07A and 1.07B of Ch. 1, Title 122A, Taxation-General, V. T. C. S., which provide for the recording in the office of the County Clerk of tax claims filed by the State against persons etc. against whom the State has assessed taxes to be due under such Title and which provides that from the date of such recording such claim shall operate as a lien on the *real estate* [2] of the person etc. owing such tax.

Similar evidence of such intent is found in Arts. 9.08 and 10.17 of Title 122A found in Chs. 9 and 10, respectively, of such Title which Chapters relate to a motor fuel tax and a special fuels tax, the Articles noted providing for the creation of a lien on motor vehicles belonging to the tax payer by the Comptroller of Public Accounts filing notice of the lien with the State Highway Department and providing that "such liens shall not be valid as to any mortgagee of a motor vehicle if the lien of such mortgagee was created and recorded prior to the filing of such certificate by the Comptroller of Public Accounts with the State Highway Commission."

These instances of legislative activity clearly demonstrate that the Legislature was aware of the problem created by the priority provisions of Arts. 1.07 and 20.13, and they dealt with such problem specifically as shown. We must accord to such actions by the Legislature their natural and normal effect, which is that the preferences provided in such articles remain in full force except as modified by the Legislature. To hold otherwise would be to give no effect to any of the modifying statutes, because if Allied is correct the law is the same without as it is under such statutes.

State of Texas v. Wynne, 134 Tex. 455, 133 S.W.2d 951, (1939) is dispositive of this suit. There the Court considered Sec. 7 of Art. 7065a, R.C.S. 1925, now repealed, which provided, in part, that, "All taxes, fines, penalties and interest due by

2. Italics ours.

any distributor to the State (for gasoline excise taxes etc.) shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, upon all the property of any distributor, devoted to or used in his business as a distributor \* \* \*" and held that the lien created by this statute was prior and superior to contractual liens accruing prior to the enactment of the statute. In reaching this decision, the Court used the following language:

"Many courts hold that property used in a business may be subjected to a lien for an excise or occupation tax on the business carried on, although it is not owned by the person carrying on the business \* \* \*

"It is contended by some of the intervenors, if not by all of them, that Section 7, in creating a lien to secure the motor fuel tax and providing that such lien should be prior and superior to all other liens, speaks prospectively and not retrospectively, and has no application to contractual liens accruing prior to the passage of the Act; the priority of the State's lien over other liens being limited to those liens, contractual or statutory, accruing subsequent to the passage of such Act.

"The burden of levying taxes rests on the Legislature, and that body has plenary power of prescribing the mode of taxation to raise revenue; and the specification of certain objects and subjects of taxation in the Constitution does not prevent it from passing laws requiring other subjects or objects to be taxed, unless expressly prohibited by the Constitution. Section 17 of Article 8, Constitution, Vernon's Ann. St.

"It has been demonstrated that only a small per cent. of the amount of funds necessary to maintain the State government is raised under the ad valorem tax plan. The Legislature has been compelled to resort to other methods of raising revenue to meet the demands of our expanding State government. Hence Articles 7065a—1 et seq., 7047, Vernon's Ann.Civ.St., and others, of the Revised Civil Statutes were enacted. It is well known that Article 7065a—1 et seq. is the State's greatest revenue producer. Section 41a of Article 7047 imposes an occupation or excise tax on every person in Texas manufacturing or importing cement, and who thereafter distributes, sells or uses the same in intrastate commerce. Likewise, the law imposes an occupation or excise tax on several other occupations, and gives the State a preference lien on the property used in connection with such occupations. \* \* \*

"It may well be admitted that the rule fixed in this Act may appear to be harsh, and will cause hardships to those who in good faith have acquired liens on property prior to the time when taxes may be due the State under this law. The Legislature has seen fit, in the exercise of its power and discretion, to so declare that to be the public policy of this State. The history of this Act and the language used therein leaves no doubt as to the clear intention of the Legislature to declare all liens, regardless of the time when such liens originated, upon the property used by the distributor, described in said Act, to be inferior to the claim and lien of the State fixed by this law.

It appears that the Legislature has adopted this mode of taxation in order to obtain revenue to support the State government. It is the duty of the courts to uphold such legislation, unless it clearly appears to violate some provision of our Constitution. The decisions above cited tend to uphold such legislation. This Court holds that the Act in question is a valid exercise of the power delegated by the Constitution to the Legislature to levy taxes.

If same is unjust and needs amending, that power rests exclusively with the Legislature."

Following this case and in conformity with it is the case of Gummelt v. Southwestern Indemnity Company, 363 S.W.2d 379, Waco Tex.Civ.App., writ ref., n. r. e.

The above discussion and citation of authorities requires us to overrule appellant's points that the liens asserted by it are valid as against the liens of the State and that enforcement of the tax liens of the State unconstitutionally deprives it of its property without due process of law as guaranteed by the Federal Constitution.

The judgment of the trial court is affirmed.