**STATE of Texas et al., Appellants,**

v.

**C. I. FITTS, Appellee.**

**No. 11424.**

Court of Civil of Appeals of Texas.

Austin.

June 29, 1966.

Rehearing Denied July 20, 1966.

The State filed cross action for the taxes. The trial court held appellee was not liable for any of the State's claim.

The State's cause of action in chief is for taxes upon taxable sales of gasoline by appellee imposed by Article 9.02(1) which have not been paid to the State. Appellee's liability for these taxes is grounded in the main on its audit pursuant to Articles 9.22(2) and 9.17(1).

The State audited all the known records of appellee, and the records of his vendors and vendees. The audit shows that he sold at wholesale to service station retail outlets in Texas, and at retail through his own service stations, more gasoline than he purchased from his known suppliers. The State's investigation did not discover from whom nor in what manner he acquired this excess gasoline.

The State and Robert S. Calvert, Comptroller, filed their cross action for tax claim in the amount of $3,362.35 of taxes and for the penalties and interest provided for in said Chapter 9 and also for the additional statutory penalty in the same amount of the taxes, which is provided for in Article 9.22(1) of said Chapter 9. Appellants also prayed for foreclosure of the statutory lien upon the truck tractor and tank trailer used by appellee in his wholesale gasoline distribution business to secure its claim.

Appellants assert that Chapter 9 of Title 122A was intended to provide and that it does provide a completely comprehensive method of taxing every gallon of motor fuel sold, distributed and used in this State and of collecting that tax.

Applied to the case at bar we submit that it provides that any one who acquires gasoline in any manner without being able to show either payment of the tax as provided in Articles 9.22(2) and 9.17(1) or that such acquisition was lawfully tax free, and who sells such gasoline at other than a tax free sale duly authorized as such by the Comptroller, makes a first resale which is a "first sale" and a taxable sale.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Administrative Asst. Atty. Gen., H. Grady Chandler, W. E. Allen, Kerns B. Taylor, Asst. Attys. Gen., Austin, for appellants.

Bryan & Amidei, A. J. Bryan, Maurice Amidei, Fort Worth, for appellee.

ARCHER, Chief Justice.

This is a suit by appellee for a declaratory judgment that he was not liable for motor fuel taxes under Chapter 9 of Title 122A, Taxation-General, Vernon's Civil Statutes.

The appeal is founded on nine points and are to the effect that the trial court erred in failing to hold that plaintiff's sales of the motor fuel were taxable "first sales," and no evidence to disqualify all such sales from being taxable sales and the evidence proved that such sales were taxable, and such sales were taxable subsequent sales within contemplation of Article 9.02(1), in failing to hold that plaintiff was a distributor who made first sales, and that plaintiff was a dealer who was required to keep full records of all purchases and sales and to pay the taxes; that the court erred in not holding that the State had a prior lien on the truck used in plaintiff's business, and in not assessing a penalty equal to the amount of the taxes due against plaintiff, and finally that the court erred in refusing to admit into evidence certain exhibits concerning prosecution of plaintiff for a criminal offense occurring some time subsequent to the period the taxes were alleged to be delinquent for the purpose of testing the memory and veracity of Mrs. Fitts, a witness for plaintiff.

Article 9.01(10) defines "first sale" as follows:

" 'First sale' shall mean, except as otherwise provided herein, the first sale or distribution in this State of motor fuel, produced, refined compounded, imported into, or otherwise acquired in said State; provided that when motor fuel has been purchased tax free under the terms of this Chapter, the first resale or distribution of said motor fuel for any purpose other than a tax free sale duly authorized as such by the Comptroller shall, for the purposes of this Chapter, mean and constitute a 'first sale.' "

■ We believe that the plaintiff was liable for the taxes and the resulting penalty and the State should recover the taxes sued for and the penalty and was entitled to a lien and a foreclosure of such on the truck. Judgment is here rendered for the State and that of the trial court is reversed.

The plaintiff, appellee herein, does not plead that he acquired the motor fuel in question at a prior sale in Texas, or at a prior "first sale" in the State.

The audit made by the State is uncontradicted and shows that the appellee sold more gasoline during the period of the audit than refinery records from whom he states he purchased show that he purchased. There was no showing from whom or in what manner he acquired the excess gasoline he sold, that is, the amount his records show he sold over the amount shown by the records of the refineries as purchased by him.

The core of this litigation is how or from whom the excess gasoline in controversy was acquired by appellee, the manner of such acquisition, of if any former seller or purchaser thereof, if any, had paid the tax thereon to the State.

The State contends in the alternative that if appellee's excess sales were not the first actual sale of motor fuel which had been acquired in some manner in this State, then that all of appellee's sales were the first resale of said motor fuel within contemplation of that portion of the definition of a "first sale" contained in Article 9.01(10) which reads:

" * * * provided that when motor fuel has been purchased tax free under the terms of this Chapter, the first resale or distribution of said motor fuel for any purpose other than a tax free sale duly authorized as such by the Comptroller shall, for the purposes of this Chapter, mean and constitute a 'first sale.' "

There is no question but that the tax imposed upon sales of motor fuel has not been paid to the State on the fuel in question.

Appellee could not purchase, legally, at tax-free purchases by himself, because he was not a licensed and bonded distributor as required by Article 9.05, subdivisions 1 and 2. He had neither a permit nor a bond.

There is no indication that resales or subsequent sales should escape taxation but the intent of the statute is expressed in Article 9.02(1) which levies the tax that:

"* * * the said tax shall be added to the selling price, so that such tax is paid ultimately by the person using or consuming said motor fuel for the purpose of generating power for the propulsion of any motor vehicle upon the public highways of this State."

The Motor Fuel Tax Act as enacted shows a Legislative intent to tax every first actual sale and each subsequent sale, excepting those specifically exempt under Article 9.02 (4), and those tax-free under Article 9.05 (1) and (2), is subject to the tax so that the tax is passed on to the ultimate consumer.

Article 9.17(1):

"If any distributor fails or refuses to collect and remit or to pay to the Comptroller any tax, penalties, or interest within the time and manner provided by this Chapter, and it becomes necessary to bring suit or to intervene in any manner for the establishment or collection of said claim, in any judicial proceedings, any report filed in the office of the Comptroller by such distributor or his representative, or a certified copy thereof certified to by the Comptroller or his Chief Clerk, showing the amount of motor fuel sold by such distributor or his representative, on which such tax, penalties, or interest have not been remitted or paid to the State, or any audit made by the Comptroller or his representatives, from any books or other records required to be kept or that may be kept by said distributor, when signed and sworn to by such representatives as being made from said books and records of said distributor or from any books or records of any person from whom such distributor has bought, received, delivered, or sold motor fuel, crude oil, or the derivatives of crude oil, or natural gas, or from the books and records of any transportation agency, who

has transported any of said products, such report or audit shall be admissible in evidence in such proceedings, and shall be prima facie evidence of the contents thereof; provided, however, that the prima facie presumption of the correctness of said report or audit may be overcome, upon the trial, by evidence adduced by said distributor."

Article 9.22(2):

"Provided further, that if the Comptroller finds from examination of records or from other investigation that motor fuel has been sold, delivered, or used for any taxable purpose without taxes levied by this Chapter having been paid to the State of Texas, or accounted for by a licensed distributor, he shall have the power to require the person making such taxable sale, delivery or use of such motor fuel to pay into the State Treasury through the Comptroller the taxes due and a penalty equal to the amount of such taxes due. If any person who has made any such taxable sale or taxable use is unable to furnish sufficient evidence to the Comptroller that said taxes have been paid, or accounted for by a licensed distributor, the prima facie presumption shall arise that such motor fuel was sold, delivered, or used without said taxes having been paid."

Article 9.03(1) provides for the payment of the tax at Austin, Texas.

Appellee did not testify in person. Mrs. Fitts, his wife, testified that she and her husband owned and operated the wholesale and retail gasoline business and had for many years, and that she kept the records and that the business office had been burglarized and some of the records were taken and that Mr. Fitts had paid the taxes to the refineries on all gasoline purchased and sold.

 We do not believe that the testimony of Mrs. Fitts is sufficient evidence to overcome the uncontradicted audit and that of the auditors as to the delinquent taxes.

Mr. Fitts, by the provisions of Articles 9.09 and 9.03, was required to keep complete records and to make reports of all of his transactions relating to all gasoline which he acquired, handled and disposed of in any manner.

Appellee does not plead payment of the tax to the State or offer a satisfactory explanation of how he acquired it, and is liable for the tax. State v. City of El Paso, 135 Tex. 359, 143 S.W.2d 366.

■ The International Truck-tractor and Trailmobile semitrailer was used by appellee in his gasoline business, and is subject to the State's prior lien. Articles 9.08 and 1.07; Allied Finance Company v. State, Tex.Civ.App., 387 S.W.2d 435, er. ref., n. r. e.

The penalty equal to the amount of the taxes due is due by appellee as authorized by Article 9.22(2).

The judgment of the trial court denying the State recovery is reversed and judgment here rendered in favor of the State for the amount sued for, statutory penalty, other penalties and interest as provided in the Motor Fuel Tax Act, the State is declared to have a prior lien, and such lien is ordered foreclosed upon the vehicles described in the trial court's judgment, for order of sale and costs.

Reversed and rendered.

## CONCURRING OPINION

HUGHES, Justice.

The following is taken from appellee's brief:

"The facts are uncontroverted that part of Appellee's records for the period in question were stolen and that there are records of such facts in the police department of Lake Worth, Texas. If Appellee's records had been destroyed by fire, certainly it could not hold to be within the contemplation of the legislature that these statutes here involved would or should, merely by recitation of the requirements of keeping records, result in a person being held liable for taxes and penalty on his failure to present the records lost, stolen, or destroyed through no fault of his own. Certainly the taxing authority, Appellants here, should be reasonably expected and required to come forward with some evidence showing fault or some other act of misconduct by Appellee as a basis for placing full responsibility for the loss of the records and/or failure or refusal to carry out some duty imposed upon him by the act in question. No such facts have been plead nor proved by Appellants and no evidence controverting Appellee's explanation of the loss of his records has been produced by Appellants. To the contrary, Mrs. Fitts' testimony shows without contradiction that Appellee kept the required records that were later stolen. Appellee did not refuse to produce the records nor did he fail to keep the required records. They were stolen through no fault of Appellee."

My construction of the statutes requiring the keeping of records is diametrically opposed to the interpretation placed upon them by appellee. The records required to be kept by a Distributor or Dealer for inspection by the Comptroller or the Attorney General are to be kept for a period of *two years*. Arts. 9.09 and 9.10. If absence of these records can be accounted for by the Distributor or Dealer by his, or his wife's, testimony that they have been lost, stolen or destroyed, then the State of Texas is at the mercy of every such Dealer or Distributor insofar as the collection of motor fuel taxes from them is concerned.

The manifest showing the transaction between a Distributor and a Dealer is, or a copy, required to be kept by both Distributor and Dealer. It would be an unlikely coincidence for the records of both to be unavailable. When that situation is presented, the Courts will, of course, determine it. In this case, the records of the

refineries from whom appellee's wife claims he bought gasoline are available. They do not show that appellee bought from them the gasoline here involved. Under these circumstances it is my opinion that only by such records could appellee exonerate himself from liability for the taxes for which the State sues, and that the testimony of appellee's wife is conclusively repudiated by the refinery records and amounts to no testimony in this respect.

Appellee has clearly made taxable sales of the gasoline for which taxes are sought, that is he has made sales on which taxes were or should have been collected. He has failed to show by competent evidence that the taxes on such gasoline sold by him have been paid to the State. The presumption contained in Art. 9.22, V.T.C.S., prevails and appellee, in my opinion, is liable for the taxes claimed.

I concur in the decision by the majority.