Marlin MILLER et al., Appellants,

v.

Robert S. CALVERT, Comptroller et al., Appellees.

No. 11524.

Court of Civil Appeals of Texas.

Austin.

Sept. 13, 1967.

McCall & McCall, LeRoy McCall, Hamshire, for appellants.

Crawford C. Martin, Atty. Gen., George Cowden, First Asst. Atty. Gen., A. J. Carrubi, Legal Asst. Atty. Gen., John R. Grace, Kerns B. Taylor, Asst. Attys. Gen., Austin, for appellees.

O'QUINN, Justice.

Mary Loper Collier and L. I. DeCordova owned a tract of land in Spindletop Heights Subdivision in Beaumont which they leased to Marlin Miller of Chambers County. Pursuant to terms of the lease, Miller erected a building on the land and rented on a month-to-month basis to a tenant who in 1962 operated the "Derrick Club" on the premises.

The "Derrick Club" was subject to the state admissions tax imposed under Article 21.02, Chapter 21, Title 122A, Taxation-General, V.A.T.S. The taxes for the months of January through September of 1962 became delinquent in the amount of $1,485.00. The taxes were not paid, and the State filed a tax lien on the property in November, 1964, under provisions of Articles 1.07, 1.07A, 1.07B, and 21.04(2) of Title 122A, Taxation-General, recorded in the "State Tax Liens" records of Jefferson County.

In December of 1965 the State initiated steps to sell the property to satisfy the tax claim against the operator of the "Derrick Club." The appellants, owners and lessee of the property, in order to prevent the property from being sold under the tax lien, paid the taxes in the sum of $1,485 under protest as provided under Article 1.05, Title 122A.

The owners of the property and their lessee brought this suit to recover the taxes paid by them under protest. These plaintiffs moved for summary judgment and were overruled by the trial court. The case was tried before the court without a jury. The district court found for the State, awarding recovery of taxes in the sum of $1,485, and decreed that the plaintiffs take nothing.

Appellants have perfected their appeal and assigned two points of error. Appellants contend that Article 1.07 as amended in 1961 repealed the provision for tax liens under Article 21.04(2), and that even without such repeal, the lien under Article 21.04 (2) would not attach to property not owned by the amusement operator although used in the business.

We overrule these assignments of error and affirm the judgment of the trial court.

Appellants take the position that the lien on all property used as a place of amuse-

ment, as provided in Article 21.04(2) has been repealed by the amendment of Article 1.07 because the lien in Article 21.04(2) is in conflict with the lien in Article 1.07 as amended in 1961. (Acts 1961, 57th Leg., ch. 104, secs. 1, 2 and 3, p. 201).

Article 1.07 was a part of the original enactment in 1959 of Title 122A, which also contained Article 21.04(2). (Acts 1959, 56th Leg., 3rd C.S., ch. 1, p. 187).

The act·of 1959 revised and rearranged certain statutes of Title 122 and certain other laws of the State relating to taxation into a new title designated "Title 122A, Taxation-General." This description is expressly set out in the caption of the law.

The context of Title 122A, consisting of 24 chapters, embraces numerous levies of taxes. The Title provides varied and sundry administrative and procedural processes, as well as a number of different methods for enforcement and imposing penalties.

The amendment of 1961 reenacted Article 1.07 substantially as it had appeared in the act of 1959, but added a proviso requiring certain liens on real estate to be recorded before the lien should become effective "against any mortgagee, holder of a deed of trust, purchaser, pledgee, or judgment creditor acquiring title, lien or other right or interest * * *."

Two new sections, Articles 1.07A and 1.07B, were added in 1961, prescribing the type of record to be adopted and used by the county clerk and fixing the recorded lien upon all real property presently owned or later acquired by the taxpayer in the county where the lien is recorded.

The first sentence of Article 1.07 was unchanged in the 1961 amendment except for the addition of a clause referring to the change to be made subsequently in the statute. The first sentence, with the added clause noted, reads as follows:

"All taxes, fines, penalties and interest due by any individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee or receiver to the State of Texas, by virtue of this Title, shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, *subject, however, to the modification hereinafter contained,* upon all the property of any individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee, or receiver." (Emphasis denotes added clause).

■ A reading of this sentence shows clearly that the lien made the subject of Article 1.07 is the lien normally derived from the liability of the taxpayer. The next sentence in the article, reenacted in 1961 without change, reads as follows:

"This lien shall be cumulative, and in addition to the liens for taxes, fines, penalties, and interest now provided by law, and shall attach as of the date such tax or taxes are due and payable."

In the 1961 amendment the legislature at this point inserted the provision requiring a tax lien affecting real estate to be recorded before it could be effective as to the interests of "any mortgagee, holder of a deed of trust, purchaser, pledgee, or judgment creditor" who acquired a title or interest in the property before notice of the State's lien was recorded.

Section 4 of the amendatory act of 1961 reads as follows:

"All laws and parts of laws in conflict with the provisions of this Act are hereby repealed; and, in case of such conflict, the provisions of this Act shall control and be effective. This Act shall have no application to litigation pending in any court of competent jurisdiction in this State." (Acts 1961, 57th Leg., ch. 104, sec. 4, p. 201, effective May 5, 1961).

■ We believe that passage of the amendment of Article 1.07 in 1961, with the

act containing the quoted repealing clause, did not repeal any part of Article 21.04. To hold otherwise would be to suggest that the legislature, by adding a provision to Article 1.07 for recording liens, intended to make sweeping changes with regard to liens in other chapters of Title 122A, including chapter 21 containing Article 21.04.

Chapter 1 of Title 122A, in which Article 1.07 appears, is the "General Provisions" chapter and does not impose any State tax. The specific, or special taxes, levied by Title 122A are found in chapters 2 through 23, both inclusive, and chapter 24 deals with "Allocation of Tax Revenues."

■ A general repealing clause in an act amending one or more articles in chapter 1 of Title 122A, if construed to repeal special provisions for taxes and liens contained in 23 other chapters of the Title, would put the legislature to the task of reenacting the entire Title in order to avoid such repeal. Article 1.07 concerns taxes due by taxpayers "by virtue of this *Title*," and is made expressly cumulative of the special and particular provisions of Title 122A contained in other chapters. Article 21.04(2) is not general, but special, and deals particularly with the "Admissions Tax." This article fixes a "prior lien for all delinquent taxes and penalties *provided for in this Chapter* on all property used by the owner or operator of *any place of amusement* as designated *in this Chapter*. * * *" (Emphasis added).

■■ The phrase in an Act that "all laws or parts of laws in conflict with the provisions of this Act are repealed" is subject to the same rules of interpretation as other enactments and the intent must prevail over the literal construction. First National Bank of Giddings v. Lee County Cotton Oil Co. (Tex.Com.App., 1925), 274 S.W. 127; Ex parte Coleman, 157 Tex.Cr.R. 37, 245 S. W.2d 712. If no repugnancy between the prior law and the later act can be found, the court may not find that the later act repeals the prior statute. Gaddes v. Terrell, 101 Tex. 574, 110 S.W. 429. We believe there is

no repugnancy between Article 1.07 as amended and Article 21.04 and that the two statutes will stand together.

■ The amendment of 1961 did not contain any language expressly repealing the provisions of any other law. The repealing clause was general. For the amendment of 1961 to repeal the provisions of Article 21.-04, it is necessary to indulge in repeal by implication, which is not favored. The two laws should be construed in such manner as to allow both to stand. Townsend v. Terrell, 118 Tex. 463, 16 S.W.2d 1063 (Tex. Com.App.).

■ Since Article 1.07 as amended is general in its terms, and Article 21.04 is specific in its terms, the specific statute more clearly evidences the intention of the legislature and will control, even if a conflict should exist, which we do not find. Townsend v. Terrell, supra, 16 S.W.2d 1063, 1064, col. 1. In accord with this rule are Fortinberry v. State, 283 S.W. 146 (Tex.Com. App., 1926, opinion adopted by Sup.Ct.); Hallum v. Texas Liquor Control Board, Tex.Civ.App., Dallas, 166 S.W.2d 175 (writ ref.).

In Jefferson County v. Board of County and District Road Indebtedness, 143 Tex. 99, 182 S.W.2d 908, the Supreme Court considered a statute in which the legislature had expressly termed the act "cumulative," but provided that if the act was in conflict with either general or special laws, the provisions of the act would prevail over the prior laws. The Court held that this repealing clause was not sufficient to repeal a special law, even though in some respects it might be inconsistent.

In this connection the Supreme Court said:

"Ordinarily, a general repealing clause of inconsistent Acts does not, when contained in a general Act, operate to repeal a local or special Act, even though the provisions of the two Acts are in some respects inconsistent * * *. The in-

tention to repeal special Acts embodying conflicting provisions must be clearly evidenced." 182 S.W.2d 908, 915, col. 1.

■ In seeking to discover the legislative intent, a court may look to all the provisions of the enactment and examine the general course and scheme of legislation on the subject. 53 Tex.Jur.2d, Statutes, sec. 163, p. 237. We consider the legislative history of Title 122A a significant part of the general course and scheme of legislation on the subject of taxation involved in this case.

Prior to 1959, when the legislature enacted the statutes now designated "Title 122A, Taxation-General," the State had two general lien laws. Article 1.07 as it appeared in the act of 1959 was adopted verbatim from the language of former Article 7057e of Title 122, which provided a general lien for occupation and certain other taxes. A general lien was provided for the State's gross receipts taxes under former Article 7083b of Title 122 in language similar to the terms of Article 1.07.

The State imposed numerous taxes under old Title 122. Not more than thirteen or fourteen of the specific taxing provisions of Title 122 contained provisions creating liens for nonpayment of these taxes. The lien for all other taxes, except property taxes, was found in the two general lien laws, Articles 7057e and 7083b of Title 122.

The special tax laws containing specific liens were amended at various times after the general lien laws became effective, and the specific lien was in each instance retained. As new special taxes were passed by the legislature, many contained specific lien provisions. An example is former Article 7047l, the "Miscellaneous Excise Tax," now chapter 20 of Title 122A.

The Admissions Tax, under consideration in this case, is another example of a tax measure enacted by the legislature with specific provisions for the lien. This tax was imposed originally in 1936, and through subsequent amendments in 1953, 1957, and 1959,

the legislature retained and reenacted the specific lien provision now found in Article 21.04(2).

■ We believe it is implicit in the scheme and course of legislation related to Title 122A that the legislature intended the general lien law to apply only to those taxing statutes which did not contain a specific lien provision.

The specific lien provision of a special tax statute was applied in Gummelt v. Southwestern Indemnity Company, Tex. Civ.App., Waco, 363 S.W.2d 379 (writ ref., n.r.e.), although a general lien statute substantially identical with Article 1.07 appeared to be in conflict with the special lien statute.

The suit involved in the Gummelt case was filed in 1958, prior to enactment of Title 122A. At that time Article 7083b, a general lien statute, appeared to oppose the special lien under Article 7065b-14(g) (Article 10.17, Title 122A). The general lien statute purported to apply to all taxes due "by virtue of this Act," it was expressly cumulative and it contained a repeal of all laws or parts of laws in conflict. Its terms were precisely the same as Article 1.07 with respect to the particular statutory language under consideration.

The court followed State v. Wynne, 134 Tex. 455, 133 S.W.2d 951, holding that the State had a lien superior to all other liens, regardless of when created, and that the lien applied to "all property used in the fuel dealer's business, even though the dealer does not own the property." 363 S.W.2d 379, 381, col. 1. The court in the Gummelt case observed that the special lien statute "resolves such lien to be specific and perfected, as distinguished from an inchoate and general lien."

Legislative activity in tax lien matters was examined by this Court in Allied Finance Company v. State, Tex.Civ.App., Austin, 387 S.W.2d 435 (writ ref., n.r.e.), in

which the rule of State v. Wynne was followed.

The legislature with commendable foresight incorporated in the act adopting Title 122A a section titled, "Construction of this Act." That provision, section 3 of the enactment, reads as follows:

"With respect to the provisions of this Act which tax transactions subject to taxation by the State prior to the effective date of this Act, this Act shall be considered to be the equivalent of a revision by amendment even though it is in the form of an enactment of new law and repeal of the old law. This Act shall be construed to make a substantive change in the prior law only where the language of this Act manifests a clear intent to make such a change."

The entire legislative history of the tax levies and liens under Title 122A demonstrate a changing and evolving field of revenue legislation. It is patent that the legislature anticipated amendments would be made from time to time. The whole structure of special tax levies and corresponding specific liens should not be threatened with each amendment of a general provision, unless a clear intent is manifest to repeal the special provision. Article 1.07 as amended does not "manifest a clear intent" to repeal Article 21.04(2), but on the contrary Article 1.07 purports to be cumulative of the provisions of Article 21.04(2).

Under their second assignment of error appellants make the contention that even if Article 1.07 as amended did not repeal Article 21.04(2), the fixing of a lien "on all property used by the owner or operator of any place of amusement" will not permit the lien to attach to any property not belonging to the owner or operator of the business.

It is undisputed in this case that owners of the land had no interest in the business being operated on their property. It is also agreed that their lessee, who constructed the building pursuant to his lease, and rented the property to the operator of the "Derrick Club," likewise had no interest in the business except to receive the monthly cash rentals.

It further appears in this case that the State was unable to locate and obtain service of process in its cross-action against the operator, and was permitted by the trial court to take a nonsuit as to the operator.

We have considered in another cause, decided by this Court this date, the issue presented under the second assignment of error. We decided the issue contrary to the position taken by appellants. For this reason, the assignment is overruled without further discussion, and we refer to our opinion in State of Texas v. Rex Rope, Cause No. 11,539, 419 S.W.2d 890.

The judgment of the district court is affirmed.

Affirmed.