

# THE ATTORNEY GENERAL
## OF TEXAS

May 14, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Mark W. Stiles
Chairman
County Affairs Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Opinion No. JM-696

Re:   Definition of "principal place of business" for purposes of article 601g, V.T.C.S., the out-of-state bidding act

Dear Representative Stiles:

You ask about the proper construction of article 601g, V.T.C.S. [hereinafter the act], which governs bids submitted by nonresidents to political subdivisions in Texas for construction, supplies, and services. Specifically, you ask about the proper construction of the phrase "principal place of business" that is set forth in the statutory definitions of "nonresident bidder" and "Texas resident bidder" found in section 1(a) of the act.

Section 1(b) of the act provides the following:

> The state or a governmental agency of the state may not award a contract for general construction, improvements, services, or public works projects or purchases of supplies, materials, or equipment to a nonresident bidder unless the nonresident's bid is lower than the lowest bid submitted by a responsible Texas resident bidder by the same amount that a Texas resident bidder would be required to underbid a nonresident bidder to obtain a comparable contract <u>in the state in which the nonresident's principal place of business is located.</u>   (Emphasis added).

Section 1(a)(2), of article 601g, provides that "'[n]onresident bidder' means a bidder whose <u>principal place of business</u> is not in this state, but excludes a contractor whose ultimate parent company or majority owner has its <u>principal place of business</u> in this state." (Emphasis added.)   Section 1(a)(3) provides that "'Texas resident bidder' means a bidder whose <u>principal place of business</u> is in this state, and includes a contractor whose ultimate parent company or majority owner has its <u>principal place of business</u> in this state." (Emphasis added.)   The act itself does not define the phrase

"principal place of business." You express concern that political subdivisions in this state are construing "principal place of business" in such a way as to permit companies having, for example, only one permanent office in the state with as few as one employee engaged in activities other than submitting bids to governmental agencies to compete on an equal footing with Texas resident bidders. You assert that this does not comport with the legislature's intent when it enacted the statute.

In construing a statute, we must look to the intent of the legislature and construe the statute so as to give effect to that intent. Knight v. International Harvester Credit Corp., 627 S.W.2d 382 (Tex. 1982). In determining legislative intent, we must consider the end to be attained, the mischief to be remedied, and the purposes to be accomplished. Flowers v. Dempsey-Tegeler & Co., 472 S.W.2d 112 (Tex. 1971); Calvert v. Kadane, 427 S.W.2d 605 (Tex. 1968). When the words of a statute are subject to two reasonable interpretations and are therefore ambiguous, one may consider the legislative history of the statute to determine which meaning of the words the legislature intended. San Antonio General Drivers, Helpers Local No. 657 v. Thornton, 299 S.W.2d 911 (Tex. 1957); Miller v. Calvert, 418 S.W.2d 869 (Tex. Civ. App. - Austin 1967, no writ). Specifically, in attempting to discern legislative intent from an examination of the legislative history of a statute, one looks to the purpose the original enactment served, the discussion of statutory meaning in committee reports, the effect of amendments, whether accepted or rejected, and the remarks in debate preceding passage. Johnson v. Department of Treasury, I.R.S., 700 F.2d 971 (5th Cir. 1983); Rogers v. Frito-Lay, Inc., 611 F.2d 1074 (5th Cir. 1980), cert. denied, 449 U.S. 889 (1980).

On the basis of our examination of both the House Committee on Business and Commerce and House of Representatives discussions of the bill, we conclude that the act is intended to impose on any out-of-state company seeking to bid on construction, supplies, or services contracts with a political subdivision in Texas the same burdens that are imposed, if any, upon Texas resident bidders by the state in which the nonresident's principal place of business is located. In the public hearing before the House Committee on Business and Commerce, the House author of the bill made the following remarks explaining the purpose of the proposed bill:

> In neighboring states like Louisiana, Arkansas, and New Mexico, there is a rule that says any public work awarded in that state, if an out-of-state contractor like a contractor from Texas bids a project in that state, then the Texas bidder, in order to receive the contract, has to be five percent lower than the lowest bidder in that

> state. This is Arkansas, for instance . . . . If
> a state like Arkansas, New Mexico, Louisiana, New
> York, wherever, requires that an out-of-state
> contractor be lower by a certain amount in order
> to receive that bid, we will require those state
> contractors to do the same thing in Texas. . . .

Testimony of Rep. Mark Stiles on Tex. H.B. No. 602 before House
Committee on Business and Commerce, 69th Leg., public hearing (Feb.
18, 1985) (transcript available from House Staff Services). In the
House discussion prior to the bill's passage to engrossment, the House
author of the bill explained that it was designed to create a
"reciprocity requirement in the award of state contracts so that
bidders from other states would face the same under-bid requirements
in Texas contracts that Texas bidders would experience from bidding on
comparable contracts in those states."

In Attorney General Opinion JM-616 (1987), we declared:

> [T]he term 'principal place of business' as used
> in article 601g does not necessarily refer to the
> place of incorporation or organization of a
> company, or to the residence of its majority
> owner. It means the place where the person,
> whether natural or artificial, maintains offices
> and transacts business, i.e., where the person's
> business affairs are conducted. See National
> Truckers Service, Inc. v. Aero Systems, Inc., 480
> S.W.2d 455 (Tex. Civ. App. - Fort Worth 1972, writ
> ref'd n.r.e.). The 'principal place of business'
> can sometimes be different from the place of the
> person's general offices, see Dryden v. Ranger
> Refining & Pipe Line Co., 280 F. 257 (5th Cir.
> 1922), but when a business operates in a number of
> states and no one state is clearly the state in
> which its activities are principally conducted,
> the state from which centralized general
> supervision is exercised may be considered the
> location of the 'principal place of business,'
> particularly if a substantial part of its
> operations are also conducted there. See Jackson
> v. Tennessee Valley Authority, 462 F. Supp. 45
> (D.C. Tenn. 1978). Cf. In re Commonwealth Oil
> Refining Co., Inc., 596 F.2d 1239 (5th Cir. 1979).

It is clear that the bill is intended to treat as a "Texas resident
bidder" a bidder that has more in Texas than merely an office in the
state with an employee who submits bids to various political sub-
divisions. "Principal" has been defined to mean "chief, leading,

most important or considerable, primary, original, highest in rank, authority, character, importance, or degree." Stilwell Co. v. Commissioner of Taxation, 100 N.W.2d 504, 507 (Minn. 1959); Kelty v. Burgess, 115 P. 583, 584 (Kan. 1911).

The issue of whether an office or establishment is a "principal place of business" requires, of course, a determination of fact, Kibler v. Transcontinental & Western Air, 63 F. Supp. 724, 726 (E.D. N.Y. 1945), the resolution of which would be inappropriate in the opinion process. We do conclude, however, that, for purposes of article 601g, V.T.C.S., a bidder's "principal place of business" refers to the place where the bidder maintains offices and a substantial part of its operations are also conducted there.

### S U M M A R Y

For purposes of article 601g, V.T.C.S., which governs bids submitted by nonresidents to political subdivisions in Texas for construction, supplies, and services, a bidder's "principal place of business" refers to the state in which the bidder maintains an office and a substantial part of its operations are also conducted there.

Very truly yours,

**J I M   M A T T O X**
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General